535 So.2d 663 (1988)
Hugh Mallory PRIVETT, Jr., Appellant/Cross Appellee,
v.
Sarah Davis PRIVETT, Appellee/Cross Appellant.
No. 87-0969.
District Court of Appeal of Florida, Fourth District.
December 21, 1988.
*664 Herbert L. Gildan and Kenneth A. Marra of Nason, Gildan, Yeager & Gerson, P.A., West Palm Beach, for appellant/cross appellee.
DeSantis, Cook & Gaskill, North Palm Beach, and Jane Kreusler-Walsh of Klein & Beranek, P.A., West Palm Beach, for appellee/cross appellant.
DOWNEY, Judge.
Appellant, Hugh Mallory Privett, Jr. (husband), appeals from a final judgment of dissolution of marriage and appellee, Sarah Davis Privett (wife), cross appeals.
The parties' marriage survived twenty-six years and produced three children, one of whom was a minor, age sixteen, at the time of dissolution. The wife was forty-nine years of age and a college graduate with a bachelor's degree in music. She was encouraged by her husband to remain at home and raise the children and, thus, did not work outside the home during the marriage. She presently earns a small amount of money giving music lessons. A vocational rehabilitation expert testified that with a teaching certificate she could earn approximately $20,000 per year.
The husband is an engineer with Pratt & Whitney Aircraft earning approximately $80,000 per year. The assets of the parties reflected in a pretrial stipulation and the final judgment consist of: the marital home worth $100,000 with a $7,000 mortgage; $75,412 in proceeds from the sale of a lot in PGA; savings and money market accounts worth $8,250; stocks and bonds worth $7,964.75; the husband's $10,000 IRA; the wife's $500 IRA; life insurance policies owned by the husband with a face value of $45,500; life insurance policy owned by the wife with a face value of $5,000; the husband's retirement benefit plan from which he will receive $1,172.10 per month if he retires at age fifty-five; the husband's Pratt & Whitney savings plan worth approximately $140,000; husband's life insurance provided by Pratt & Whitney in the amount of $159,800; a 1981 Oldsmobile worth $2,500; a 1985 Honda worth $8,480; a townhouse in PGA with $2,300 equity in it; and household furnishings worth approximately $20,000.
The final judgment awarded the wife custody of the minor child, and $500 per month child support until he reaches eighteen years of age or graduates from high school, whichever is last to occur. The wife was awarded $2,000 per month permanent periodic alimony. In addition, the husband was required to pay all reasonable and necessary medical and dental expenses for the child. Furthermore, the husband was required to convey his interest in the marital home to the wife and assume the mortgage indebtedness thereon, plus furnish her with $9,000 for necessary repairs. The judgment required the husband to continue to maintain his current life insurance with the wife as beneficiary for "as long as he is required to pay alimony." Roughly speaking, the husband was allowed to keep the remainder of the property owned by himself and that owned by the parties jointly.
On appeal, the husband contends the trial court erred in 1) awarding permanent periodic alimony rather than rehabilitative alimony, 2) awarding an excessive amount of alimony and child support, 3) providing that the child support will survive the child's eighteenth birthday if he is still in high school, and 4) requiring him to secure the periodic alimony with his life insurance policy. The wife, in her cross appeal, says the equitable distribution fashioned by the trial court was inequitable.
In our view, the award of permanent periodic alimony was appropriate in this twenty-six year marriage. The wife is *665 fifty years of age, furnished a home for her husband and three children throughout the marriage, and has only mediocre earning potential giving music lessons or teaching music. Haass v. Haass, 468 So.2d 1053 (Fla. 4th DCA 1985); King v. King, 420 So.2d 630 (Fla. 4th DCA 1982); Lash v. Lash, 307 So.2d 241 (Fla.2d DCA 1975). We would concede that there are some ostensible duplications and inaccuracies in the wife's calculation of her needs. However, how the court arrived at $2,000 per month instead of $1,800 or $2,300, or some other figure, is a matter of sheer speculation. He could well have chosen the figure he did as a reasonable sum in the light of the total equitable distribution package and as an offsetting factor against the larger distribution of the marital assets to the husband. Suffice to say, measured by the Canakaris rule, the husband has failed to demonstrate error in the type of alimony awarded or the amount of alimony and child support.
As mentioned earlier, the judgment required the husband to pay the child support until the child reached his majority or finished high school, if the latter occurred after he was eighteen years old, but made no finding of dependency as to the child. Since the judgment was entered, this court has held that the legal obligation of support ends upon a child's reaching his or her majority, unless he is dependent as provided in section 743.07, Florida Statutes (1985). Attending high school does not make the child statutorily dependent so as to extend the legal support obligation. Carter v. Carter, 511 So.2d 404 (Fla. 4th DCA 1987). Therefore, that portion of the final judgment requiring the husband to pay child support beyond the child's eighteenth birthday was error.
Coincidentally, we have also just recently ruled in an en banc decision in Longo v. Longo, 533 So.2d 791 (Fla. 4th DCA 1988), upon the question raised in the next point, i.e., the propriety of requiring that alimony be secured by life insurance. The pendency of the question en banc precluded a decision in this case at an earlier date. In any event, it is now clear that, in this district, in accordance with section 61.08(3), Florida Statutes (1985), if there is a need, the trial court may require acquisition or continuation of a life insurance policy, or the furnishing of other property to secure an alimony award. Furthermore, such a practice is not an award of post mortem alimony, but merely secures the amount of an arrearage accruing prior to the death of the person obligated to pay the alimony award. Thus, we could also affirm on this point, if the record clearly showed that the trial court had made a determination of need. One might rhetorically ask, "Why would the trial judge have ordered such security if he didn't feel there was a need?" We can only respond that such provision for security is not automatic and is justified only if there is a demonstrated need to protect the alimony recipient. Thus, a trial judge should expressly make such a determination prior to including provision for such security in a judgment.
Finally, we turn to the cross appeal, in which the wife contends she was awarded 29% of the marital assets and her husband received 71%. Predictably, the husband's figures reflect a 44-56% imbalance.
Everyone knows now that an equitable distribution of marital property does not necessarily mean an equal distribution. It means a division of the property that is, in all aspects, fair to both. Alimony is one of the tools at the trial judge's disposal in fashioning a fair division of the marital assets and it is often used to offset an unequal splitting of the estate. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). As we view the net asset picture, we find the wife receiving assets valued at about $130,000, while the husband received, or retained, assets of about $260,000 before consideration of the capital gain tax on the sale of the PGA lot and the tax deduction he will suffer as a result of premature withdrawals from his savings plan to make the payment imposed by the final judgment. Considering those items in conjunction with the generous alimony award, we are unable to say the distribution and awards to the parties were not equitable.
*666 Accordingly, we affirm the judgment in all respects, except we reverse that portion of the final judgment requiring child support payments past the age of the child's majority and we remand the cause to the trial court to determine whether there is a need on the wife's part to have the alimony provision secured by the husband's life insurance policy as provided in the judgment. If it is determined such security is needed, the court's order should make it clear the policy is to cover only alimony arrearages, if any, which may occur. If it is not needed, the provision should be stricken from the judgment.
Affirmed in part; reversed in part; and remanded.
STONE, J., concurs specially with opinion, with which LETTS, J., concurs.
STONE, Judge, concurring specially.
I concur separately only to note my dissent in Longo v. Longo on the availability of insurance to secure payment of periodic alimony. However, I do agree that Longo must now be followed. In all other respects I concur.