745 So.2d 549 (1999)
Ronald MOOREHEAD, Appellant,
v.
Pauline Thomas MOOREHEAD, Appellee.
Nos. 98-1712, 99-0360.
District Court of Appeal of Florida, Fourth District.
December 8, 1999.
*550 Susan R. Brown of Susan R. Brown, P.A., Hollywood, for appellant.
Linda M. Smith of Law Office of Linda M. Smith, Miami, for appellee.
WARNER, C.J.
The husband appeals from a final judgment of dissolution of marriage arguing that the trial court committed multiple errors in its distribution of the parties' assets, the award of permanent instead of rehabilitative alimony, the amount of alimony awarded, and the award of attorney's fees to the wife. We affirm on all issues except for the requirement that the husband maintain life insurance to secure the alimony obligation, which we reverse.
The parties had been married for seventeen years at the time of the divorce. While they had one child who was an adult by the time of trial, she continued to reside in her parent's home. The parties' lifestyle was very modest, described as lower middle class. The wife was 43 years old and was employed part-time by a friend, installing and repairing water filters. She earned $5 per hour cash, on which she paid no tax. Prior to the marriage, the wife had attended a vocational college but did not earn a degree and had done very poorly in several of her courses. There was no agreement that the wife stay at home to raise the parties' child, and the wife had sporadic employment during the marriage. Early in the marriage she worked as a nurse's aide and also cut lawns. The husband testified that he encouraged the wife to return to school, and had tried to help her find a better job throughout the marriage. The husband has been employed by FP & L for over twenty years and was the family's main source of support.
A vocational expert testified at trial that although the wife's intelligence was slightly below average, she was capable of obtaining full-time employment. Based on that finding, he opined that she was currently underemployed. While he believed that attending vocational and community college would give her better skills in order *551 to be self-sufficient, he also gave several examples of jobs the wife could obtain without education. The one which appeared to interest the wife the most was that of a child day care worker, which pays approximately $7.50 per hour. He also testified that within three to five years she could potentially earn up to $35,000 per year as a building inspector, and he mentioned other higher paying jobs. Unfortunately, he did not have a set plan or an idea of the costs to attain a majority of these suggested positions. Ultimately, he admitted that without any additional education the wife could only earn approximately $8-10 per hour.
Based on the testimony, the court awarded permanent alimony in the amount of $500 bi-weekly, imputing to the wife an earning ability of $1,000 per month. The husband complains that the court erred in awarding permanent alimony rather than rehabilitative alimony where the court appointed vocational expert had stated that with proper education and a few years the wife could become self-sufficient. In Walter v. Walter, 464 So.2d 538, 539 (Fla.1985), the court rejected the proposition that permanent alimony should be utilized "only upon a showing of lack of capacity for self-support and only as a last resort." Instead, and as codified in section 61.08(2), Florida Statutes (1997), the wife's capacity for self-support is only one factor to consider in whether to award permanent or rehabilitative alimony.
Considering the factors listed in the statute, the trial court did not abuse its discretion in awarding permanent alimony. This was a seventeen year marriage, making it more on the side of a long-term marriage than one in the grey area. See Cruz v. Cruz, 574 So.2d 1117, 1118 (Fla. 3d DCA 1990). The wife had only a limited ability to support herself. Her employment history consisted of unskilled jobs in which she earned close to a minimum hourly wage. While the vocational expert testified that with education the wife could earn up to $35,000, the trial court obviously viewed that claim with skepticism, given her prior educational experience, her poor grades, and her below average intelligence. Moreover, the expert did not lay out any type of definite rehabilitative plan that would lead to the wife earning that kind of salary. Thus, the trial court did not abuse its discretion in awarding permanent rather than rehabilitative alimony to the wife under the facts of this case.
We also find no abuse of discretion as to the amount of alimony. While the wife admittedly inflated her expenses in her financial affidavit, with the deduction of those expenses the wife could not even support herself in a manner consistent with the conservative lifestyle of the marriage on the $1,000 per month net income the trial court imputed to her.
With respect to the distribution of assets, the wife received the marital home, with an equity of $49,500, an old vehicle, one-half interest in the husband's thrift and 401(k) pension plans minus the husband's share of the equity in the house. The husband was awarded an old vehicle, a sailboat valued at $2,000, and one-half of his pension plans, including a portion of the wife's half as a payout for the husband's share of the equity in the marital home. In addition, the court allowed the husband to retain $12,000 in cash. The husband complains that the court reversibly erred because he was left with only future assets, his pension, while the wife was left with present assets. In support of his argument he cites this court's opinion in Reynolds v. Reynolds, 711 So.2d 618, 619 (Fla. 4th DCA 1998). In Reynolds, the wife's distribution included the equity in the marital home plus jewelry and cash in the amount of $29,000, while the husband was left with his pension plan, from which he could generate $15,000 in cash only by termination. We distinguish the instant case, where the husband is the spouse who received the remaining cash in the amount of $12,000, while the wife received none. The husband does not have *552 to cash in his pension in order to meet his obligations under the final judgment. We therefore find no abuse of discretion in the trial court's division of assets.
We do find error, however, in the trial court's requirement that the husband maintain his life insurance policy on behalf of the wife. In Privett v. Privett, 535 So.2d 663, 665 (Fla. 4th DCA 1988), we held that requiring a spouse to maintain a life insurance policy to secure alimony "is justified only if there is a demonstrated need to protect the alimony recipient." Similarly, in Hedendal v. Hedendal, 695 So.2d 391, 392 (Fla. 4th DCA 1997), we stated that a trial judge should make a finding of need prior to requiring the maintenance of a life insurance policy.
In the present case, the trial court made no findings demonstrating the need to secure the wife's alimony, nor can we find any such need in the record. Neither party was in ill health, see Richardson v. Richardson, 722 So.2d 280 (Fla. 5th DCA 1998); there were no minor children residing at home, see Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989), and the husband was not in arrears in his support obligations. See Longo v. Longo, 533 So.2d 791 (Fla. 4th DCA 1988). While there may be other reasons that would support securing alimony with life insurance, we can find none here. The final judgment is reversed with directions to delete the requirement that the husband maintain life insurance to secure the wife's alimony.
We affirm as to all other issues not specifically addressed in this opinion.
STONE, J., and COX, CYNTHIA L., Associate Judge, concur.