882 So.2d 418 (2004)
Scott T. DAVIDSON, Appellant,
v.
Lois S. DAVIDSON, Appellee.
No. 4D03-4260.
District Court of Appeal of Florida, Fourth District.
August 11, 2004.
Rehearing Denied October 15, 2004.
*419 Scott T. Davidson, Coral Springs, pro se.
David S. Nicnick, Fort Lauderdale, for appellee.
GROSS, J.
Scott Davidson appeals a final judgment of dissolution of marriage, raising a number of issues. We affirm in part, reverse in part, and remand for further proceedings.
*420 The husband asserts that the trial court incorrectly found his disability pension to be a marital asset. He had a retirement pension at the time the wife filed her petition for dissolution on June 15, 2000. One day before that date, the husband applied to convert his retirement pension to a disability pension. His disability pension took effect in September 2000.
A retirement pension is considered a marital asset for purposes of equitable distribution. See Blaine v. Blaine, 872 So.2d 383 (Fla. 4th DCA 2004). On the other hand, a disability pension "by its very nature replaces future lost income, and thus is not a marital asset subject to equitable distribution." Hoffner v. Hoffner, 577 So.2d 703, 704 (Fla. 4th DCA 1991); see also Hanks v. Hanks, 553 So.2d 340, 343 (Fla. 4th DCA 1989).
For the purpose of determining assets subject to equitable distribution, "[t]he cut-off date ... is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage." § 61.075(6), Fla. Stat. (2003) (emphasis added).
In this case, at the time the wife filed her petition, the husband had a retirement pension. Although he filed an application to convert it to disability the day before the petition was filed, disability did not take effect until September 2000. Therefore, the trial court properly considered the value of the pension when identifying the parties' assets.
We agree with the husband that his child support arrearage should be recalculated.
Here, the trial court found that the husband's net monthly income was $4,550.00 and the wife's was $2,949.32. In his brief, the husband states that his monthly disability is $2,901.00 and his own social security benefits are $1,706.00 per month, for a total net monthly income of $4,607.00, rather than $4,550.00. Beginning in September 2000, the children's monthly social security benefits of $864.00 were paid to the husband. On August 11, 2003, the trial court ordered the children's social security benefits to be paid directly to the wife. In its final judgment, the trial court calculated a child support arrearage of $50,246.46 to be paid in $200.00 monthly installments.
For purposes of child support calculations, the husband's net monthly income should be $4,607.00 (disability and social security) + $864 (children's social security) = $5,471.00. The parties' combined income is then $8,420.32. As the wife points out in her brief, based on the combined income, the children's needs are $2,052.00. See § 61.30(6), Fla. Stat. (2003). The husband's responsibility is 65% and the wife's responsibility is 35%. See § 61.30(9), Fla. Stat. (2003). The husband's proportionate share of child support, after factoring in health insurance paid by the wife, is $1,352.67 retroactive to the date he began receiving benefits. Multiplying that amount by the thirty-five months where the husband was receiving the children's social security benefits (September 2000-August 2003) equals a child support arrearage of $47,343.45, and not $50,246.46 as found by the trial court. However, during that time-span, the wife concedes that the husband paid $26,293.52 in child support. Therefore, his arrearage should only be $21,049.93. On remand, the husband's arrearage shall be recalculated.
We find no abuse of discretion in the award of $92,311.65 as lump sum alimony payable at a rate of $200 a month plus interest. As the supreme court held in Canakaris v. Canakaris, 382 So.2d 1197, (Fla.1980), "[a] judge may award lump sum alimony to ensure an equitable distribution *421 of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status." Id. at 1201; see also Karrer v. Karrer, 694 So.2d 159, 160 (Fla. 3d DCA 1997) (finding that if the husband converted his retirement pension to disability, the wife would be entitled to lump sum alimony in an amount equal to what she would have received from the pension).
Here, the trial court ordered lump sum alimony to the wife as an equalizing payment in the amount of $92,311.65. The husband's pension totaled $279,881.49 and the wife's 401k amounted to $132,082.46, but was offset and reduced to a value of $95,258.19. The offset represented funds the wife withdrew from her 401k to maintain the marital home, to which the husband stopped contributing in July 2000. The trial court did not abuse its discretion by ordering the alimony because it was an integral part of the lump sum equitable distribution scheme and the husband had the ability to pay it according to the schedule provided in the final judgment.
The husband next argues that it was error for the trial court to require him to maintain a $100,000 life insurance policy with the wife as the beneficiary to protect the award of lump sum alimony.[1]
Section 61.08(3), Florida Statutes (2003), provides:
To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.
Special circumstances must exist in order to require a former spouse to maintain life insurance for an alimony award. See Solomon v. Solomon, 861 So.2d 1218, 1221 (Fla. 2d DCA 2003). There must be a demonstrated need to protect the receiving spouse. See Moorehead v. Moorehead, 745 So.2d 549, 552 (Fla. 4th DCA 1999)
Here, there were at least two special circumstances, such that the imposition of the life insurance requirement was not an abuse of discretion. First, there were minor children residing in the home with the wife as primary custodian. See Moorehead, 745 So.2d at 552. Second, the husband was in arrears in his child support and his failure to contribute to the upkeep of the marital home forced the wife to spend $36,824.27 of her 401k; this expenditure constituted almost forty percent of the lump sum alimony award. See id.
However, "there was no evidence of the cost of such a policy or whether the husband could obtain or afford it." Cozier v. Cozier, 819 So.2d 834, 837 (Fla. 2d DCA 2002). The husband's status as a disability recipient may impact his ability to secure insurance. See Forgione v. Forgione, 845 So.2d 968, 970 (Fla. 4th DCA 2003). We therefore reverse the requirement that the husband obtain life insurance to secure the alimony payments, so that the trial court may consider "the cost and financial impact on the paying spouse." Id.
We have considered the other arguments raised by the husband and find no error.
FARMER, C.J., and MAY, J., concur.
NOTES
[1] The husband does not challenge the requirement in the final judgment that he secure a separate policy of life insurance to protect the award of child support.