FARMER, J.,
concurring in reversal.
I agree with the reversal, but I oppose having any evidentiary hearings as to the meaning of the agreement. In my opinion, the meaning and purpose of the parties is clear from the plain text of their agreement as informed by the legal background against which they negotiated it. If it were ambiguous, the public policy of Florida prohibits enforcing the agreement she contends they made.
When parties negotiate an agreement, the existing legal landscape must be understood to inform their purposes. Judges should presume that they sought to do no more than what the law permits and to avoid what the law prohibits. The statutes in Florida manifestly allow only limited insurance on the life of one who has an obligation to support a former spouse by alimony. See § 61.08(3), Fla. Stat. (2005) (“To the extent necessary to protect an award of alimony, [e.s.] the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.”). We have construed section 61.08(3) to allow for such insurance only when there are special circumstances requiring such protection. See Davidson v. Davidson, 882 So.2d 418, 421 (Fla. 4th DCA 2004), rev. denied, 895 So.2d 404 (Fla.2005) (holding that “special circumstances must exist in order to require a former spouse to maintain life insurance for an alimony award.”); see also Moorehead v. Moorehead, 745 So.2d 549, 552 (Fla. 4th DCA 1999) (holding that there must be a demonstrated need to protect the receiving spouse).
The provision for life insurance to protect support of minor children is identical. See § 61.13(c), Fla. Stat. (2005) (“To the extent necessary to protect an award of *766 child support, [e.s.] the court may order the obligor to purchase or maintain a life insurance policy or a bond, or to otherwise secure the child support award with any other assets which may be suitable for that purpose.”). This statute too has been construed to require special circumstances showing that such insurance is necessary. See Cissel v. Cissel, 845 So.2d 993, 995 (Fla. 5th DCA 2003) (holding that trial court’s failure to make any findings necessary to justify requiring husband to maintain life insurance policy as security for child support obligation required remand to determine whether appropriate factors justify such protection); Guerin v. DiRoma, 819 So.2d 968, 970 (Fla. 4th DCA 2002) (holding that trial court failed to make requisite findings to justify ordering father to obtain life insurance policy to secure child support obligation).
In short, Florida law allows life insurance to secure support obligations, but only to the extent necessary to protect the obligation. In this legal context, it is obvious that the parties concluding this agreement understood that her right to purchase separate insurance was effective only while his support obligation continued and then only to make the amount of coverage sufficient if the insurance furnished by him became insufficient.
The public policy of Florida as to insurable interests is stated in yet another statute:
(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
(2) “Insurable interest”, as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction,- or pecuniary damage or impairment.
(3)The measure of an insurable interest in property is the extent to which the insured might be indemnified by loss, injury, or impairment thereof.
§ 627.405, Fla. Stat. (2005); see also Lopez v. Life Ins. Co. of Amer., 406 So.2d 1155 (Fla. 4th DCA 1981) (relying on the statute in holding that Florida law requires that an individual contracting for insurance on the life of another have an insurable interest); Aetna Ins. Co. v. King, 265 So.2d 716, 718 (Fla. 1st DCA 1972) (when the insured has no insurable interest in the property or the risk insured, the public policy of Florida renders insurance policy invalid on ground that same constitutes a wagering contract). The insurable interest requirement applies to life insurance for the protection of family support obligations. See Robbins v. Jackson Nat’l Life Ins. Co., 802 So.2d 476, 477 (Fla. 2d DCA 2001) (holding that valid orders and agreements in dissolution action provided former wife with insurable interest necessary to purchase policies in question).
The very first sentence of the insurance provision states in clear terms that: “The Husband shall maintain, at his sole expense, a life insurance policy providing death benefits to the Wife of $500,000 so long as he shall be obligated to pay either alimony and/or child suppoH.” [e.s.] Thus the parties agreed that insurance on his life was required or available only while he was obligated to pay spousal and child support. When both forms of support terminated, the purpose for any insurance ended as well. See Hauser v. Hauser, 644 So.2d 554, 555 (Fla. 4th DCA 1994) (order requiring husband to maintain life insurance policy to secure payment of alimony and child support, naming wife, as irrevocable beneficiary, had to be modified to ex *767 tent that it could be interpreted as requiring husband to support children after they obtained majority or were otherwise capable of self-support, or to confer benefit on wife in addition to her right to alimony).
To construe this agreement as she now contends would be to recognize in her a right to insurance on his life even after she has remarried and their children have become adults. That interpretation would be contrary to section 627.405. It would turn this accord into a War of the Roses[1] pact, giving her the means and the motive to profit from his demise long after any obligation of support had ended. We should not ignore the possibilities for misadventure and the intensified feelings that afflict many divorced former spouses. The implications of her proposed interpretation are too patent to require elaboration.
Thus in light of the clear public policies set forth in the statutes above, even if I thought there were some ambiguity in the insurance provision — and I am confident there is none — I should feel obligated to construe any lack of clarity against allowing her to force him to yield to continuing insurance on his life after all obligations of support have ended. To send this case back to resolve such an ambiguity is to imply the possibility of allowing enforcement when the purpose for it has ended and without an insurable interest. That cannot be right.

. War of the Roses (1989), directed by Danny DeVito, screenplay by Michael Leeson, starring Michael Douglas and Kathleen Turner. The darkly humorous plot suggests that only with extreme measures may divorce be survivable.