DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**OTTO HANS VAN MAERSSEN,**
Appellant,

v.

**DIANA GERDTS,**
Appellee.

No. 4D19-133

[May 6, 2020]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Catherine M. Brunson, Judge; L.T. Case No. 50-2014-DR-011731-XXXX-MB.

Otto Hans Van Maerssen, Walnut Creek, California, pro se.

Andrew S. Berman and Brian M. Karpf of Young, Berman, Karpf & Gonzalez, P.A., Miami, for appellee.

CONNER, J.

Otto Hans Van Maerssen ("Husband") appeals the final judgment of dissolution of marriage asserting multiple errors by the trial court. Diana Gerdts ("Wife") cross-appeals, asserting additional errors. As to the errors asserted by Husband, we reverse as to three of the issues raised and affirm the trial court's rulings as to the remainder of the issues without discussion. We explain our reasons for reversing, based on our determination that the trial court erred by: (1)(a) equitably distributing as marital assets to Husband certain accounts, even though they had been liquidated and spent prior to the final hearing, and (b) equitably distributing to Wife a survivor benefit attached to Husband's pension, without determining the value of the survivor benefit and determining who bears the cost of the benefit; (2) awarding Wife an amount of permanent periodic alimony without determining the income she could receive from her share of certain equitably distributed marital assets; and (3) failing to make findings to support the ruling requiring Husband to secure Wife's alimony award with life insurance. As to the errors asserted by Wife on cross-appeal, we affirm the trial court without discussion. Thus, we affirm in part, reverse in part, and remand for further proceedings.

*Background*

The parties had been separated for several years prior to Husband filing the dissolution action. At the time of the final hearing, they had been married seventeen years. When the action was filed, Florida was Husband's primary residence, but he was living out of the country and working as a diplomat employed by the federal government. Wife was residing in Florida and had been a homemaker during most of the marriage, caring for their minor child, who reached majority age during the pendency of the proceedings. Having been admitted to practice law in four bars, Husband represented himself throughout the majority of the proceedings below. Husband was ordered to pay Wife temporary alimony, child support, and temporary attorney's fees during the proceedings.

Relevant to the issues raised in this appeal, the evidence at the final hearing indicated the primary marital assets for equitable distribution were: the marital home; Husband's Thrift Savings' Plan, a federal employee retirement investment account ("TSP account"); and Husband's federal pension plan. Regarding alimony, Husband testified and argued at the final hearing that he would be retiring from his State Department career within two months after the hearing. According to Husband, his retirement pension would provide a fraction of his salary. He asserted Wife should not receive any alimony because after the division of the proceeds from the pending sale of the marital home and his TSP account, Wife would be getting just over half a million dollars, in addition to a share of his pension. Husband also argued that the trial court should impute income to Wife, asserting that despite her medical problems, she had been, and was then, working.

Only three witnesses testified at the final hearing: Husband, Wife, and Wife's accountant.

Husband testified that as a foreign service officer, he was facing involuntary retirement in the next two months. However, Husband did not present admissible evidence to corroborate that contention. He testified that after his retirement, he intended to obtain other employment and that the State Department would provide him with a program to help him obtain employment after retirement.

Husband attempted to testify concerning his investment funds, but Wife's objections to his testimony concerning performance of those funds and rates of return were sustained. Notably, Husband did not enter an updated financial affidavit into evidence. When asked about the earlier

financial affidavit he filed, he maintained it had been accurate. However, Husband was impeached by his deposition testimony in which he admitted his financial affidavit was in fact inaccurate in terms of his income and expenses and needed to be updated.

Regarding Wife's request that her alimony award be secured by life insurance, Husband testified that his federal employee group life insurance policy would continue after his retirement if he so chose, but that there was also the option to receive a survivor's benefit under his pension plan. He argued that it would not make sense to have both the life insurance and the monthly survivorship benefit, since both would pay out upon his death.

Wife's accountant testified as a forensic accounting expert. He prepared and presented schedules to support his testimony about Wife's proposal for equitable distribution. On cross examination, Husband elicited testimony from the accountant that two of the accounts listed in his equitable distribution schedule under Husband's column had been liquidated. When asked why he kept those values on the schedule of proposed assets to be distributed to Husband when the accounts were liquidated to pay temporary attorney's fees awarded to Wife, the accountant testified that, in his opinion, Husband did not need to liquidate those accounts to pay Wife's temporary attorney's fees because Husband had a monthly surplus of income from his nonmarital assets to pay the fee awards.

The trial court issued its final judgment dissolving the marriage and made numerous findings and determinations not relevant to the issues discussed in this opinion. We focus on the findings and determinations pertinent to our discussion.

Regarding equitable distribution, the trial court noted three primary marital assets to be distributed: the marital home and Husband's TSP account, which the parties agreed made up the majority of the marital estate, as well as Husband's pension plan. The final judgment reflected that after the conclusion of the final hearing, the trial court was advised the marital residence was sold and the parties agreed as to the amount of the net proceeds. The trial court ordered that the net proceeds be divided equally between the parties.

Regarding Husband's TSP account, the trial court determined a portion of the account was nonmarital. The amount of Husband's nonmarital portion was determined by the trial court, and the remaining marital portion was distributed equally between the parties.

The trial court also determined that a portion of Husband's pension plan was nonmarital. After determining the amount of the nonmarital portion, Wife was awarded one-half of the marital portion. The trial court also awarded to Wife the monthly survivor benefit option under the plan. The trial court noted that Husband did not object to Wife receiving the survivor benefit option. However, the trial court made no findings as to the value of the survivor benefit or the cost of the benefit and which party was to bear the cost of the benefit.

The trial court awarded Wife permanent periodic alimony. In addition, the trial court found that Husband admitted to having multiple life insurance policies, including one in the amount of $162,000. The trial court ordered Husband to secure his alimony obligation with life insurance of at least $162,000 in death benefits or, if his existing life insurance policies had a death benefit of more or less than that amount, then in the full sum of the death benefit of the current policies up to a maximum of $162,000.

After the final judgment was entered, both parties gave notice of appeal.

*Appellate Analysis*

*Equitable Distribution*

The standard of review for the equitable distribution of marital assets and liabilities is abuse of discretion. *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202-03 (Fla. 1980). Moreover, "any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the [statutory] factors." § 61.075(3), Fla. Stat. (2015). Where "there is substantial competent evidence to support the trial court's finding[s], the appellate court cannot" substitute its judgment for that of the trial court. *Schriefer v. Schriefer*, 831 So. 2d 1284, 1286 (Fla. 5th DCA 2002); *see also Rowl v. Rowl*, 864 So. 2d 1236, 1239 (Fla. 5th DCA 2004).

Husband makes various arguments that the trial court erred in its equitable distribution of marital assets and liabilities. We affirm without discussion all of the trial court's rulings as to the various equitable distributions contested by Husband, except for two of Husband's arguments, which we agree merit reversal. We address one of his arguments in this section. We address the second argument in the third section of our analysis because it relates to the trial court's decision regarding security for the alimony award.

4

Husband contends that the trial court erroneously awarded him a brokerage account and three retirement accounts as assets even though they had been liquidated prior to the final hearing to pay marital debts.[1] The evidence showed that Husband liquidated the brokerage account and the retirement accounts a few months before the final hearing and used the funds to pay two temporary attorney's fees awards entered against him in favor of Wife a month prior to the liquidation. There was no evidence that Husband used the funds for any other purpose. Although Wife contends on appeal that Husband did not need to liquidate those marital assets, based on her accountant's testimony that Husband was yielding a monthly surplus of income from his nonmarital assets at the time, Husband testified he did not have sufficient funds to comply with the temporary fee awards. The trial court made no finding as to whether Husband could have paid the temporary fee awards without liquidating the marital accounts.

As a general rule, "'it is error to include in the equitable distribution scheme assets or sums that have been diminished or depleted during the dissolution proceedings' *unless the depletion was the result of misconduct.*" *Tillman v. Altunay,* 44 So. 3d 1201, 1203 (Fla. 4th DCA 2010) (emphasis added) (quoting *Bush v. Bush,* 824 So. 2d 293, 294 (Fla. 4th DCA 2002)). "[W]hen misconduct during the dissolution proceedings results in the dissipation of a marital asset . . . , the misconduct may serve as a basis for assigning the dissipated asset to the spending spouse when calculating equitable distribution." *Roth v. Roth,* 973 So. 2d 580, 584-85 (Fla. 2d DCA 2008) (citing *Levy v. Levy,* 900 So. 2d 737, 746 (Fla. 2d DCA 2005)); *see also Romano v. Romano,* 632 So. 2d 207, 210 (Fla. 4th DCA 1994).

> When considering whether the dissipation of an asset resulted from misconduct, the question for the trial court is whether "one spouse use[d] marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *Romano,* 632 So. 2d at 210 (quoting *Gentile v. Gentile,* 565 So. 2d 820, 823 (Fla. 4th DCA 1990)). The misconduct necessary to support inclusion of dissipated assets in an equitable distribution scheme does not include mismanagement or

[1] The brokerage account was identified on the equitable distribution schedule attached to the final judgment as a Capital One Sharebuilder account, and the three investment accounts were identified as federal credit union investment retirement accounts.

> simple squandering of marital assets in a manner of which the other spouse disapproves. *Segall v. Segall,* 708 So. 2d 983, 986 (Fla. 4th DCA 1998). *Instead, to include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct.*

*Roth,* 973 So. 2d at 585 (alteration in original) (emphasis added); *see also Levy,* 900 So. 2d at 746 (reversing award of dissipated asset because the wife's testimony that she used the asset for attorney's fees and living expenses during the dissolution proceedings was unrebutted and the trial court did not find the wife guilty of misconduct); *Bush,* 824 So. 2d at 294 (reversing award of dissipated asset when the evidence showed that the husband exercised his stock options to pay the parties' financial obligations during the dissolution proceedings); *Cooper v. Cooper,* 639 So. 2d 153, 155 (Fla. 2d DCA 1994) (reversing award of dissipated asset when the husband's testimony that he used the IRA funds to pay temporary support obligations and his own living expenses was unrebutted and there was no finding of misconduct); *Knecht v. Knecht,* 629 So. 2d 883, 886 (Fla. 3d DCA 1993) (reversing award of dissipated asset when no evidence contradicted the wife's testimony that she expended the funds in her IRA for support during the dissolution proceedings).

Because there was no determination by the trial court that Husband wrongfully depleted the accounts through any misconduct or that the liquidated funds were used for any purpose that would support crediting the value of this depleted asset to him, it was error to distribute the value of the depleted accounts to him as marital assets. Therefore, we reverse the equitable distribution of the contested brokerage and investment accounts which were depleted at the time of the final hearing due to a lack of any finding of misconduct by Husband. Our reversal requires the trial court to re-determine the equitable distribution of marital assets and liabilities to make appropriate adjustments to conform to the evidence. *See Bush,* 824 So. 2d at 294. "[T]he trial court should not include assets depleted by either party." *Id.* As necessary, the trial court can entertain additional evidence.

*Alimony*

"[T]he nature and amount of an award of alimony is a matter committed to the sound discretion of the trial court." *Ryan v. Ryan,* 927 So. 2d 109,

112 (Fla. 4th DCA 2006) (alteration in original) (quoting *Kovalchick v. Kovalchick,* 841 So. 2d 669, 670 (Fla. 4th DCA 2003)).

Husband and Wife make several different arguments contending the trial court erred in the type and amount of alimony it awarded. We affirm all the trial court rulings contested by Husband and Wife without discussion, except for two contentions raised by Husband which we now discuss.

Husband argues that the trial court erred in its computation of alimony by failing to account for various sources of income in determining Wife's need. "Failing to attribute the income from property being distributed to that party when determining need and ability to pay is reversible error." *Hodge v. Hodge,* 129 So. 3d 441, 444 (Fla. 5th DCA 2013). We have acknowledged that:

> Income includes "annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments, made by any person [or] private entity. . . ." § 61.046(8), Fla. Stat. Florida courts have interpreted the statutory language to mean that a court should impute income that could *reasonably* be projected on a former spouse's liquid assets.

*Rosecan v. Springer,* 985 So. 2d 607, 609 (Fla. 4th DCA 2008) (alterations in original). We have further explained:

> A court should not require a spouse in need of alimony to deplete or invade capital assets to maintain his or her standard of living. *Hanks v. Hanks,* 553 So. 2d 340, 343 (Fla. 4th DCA 1989). However, in ruling on a request for alimony, a court must consider "all sources of income available to either party, including income available to either party through investments of any asset held by that party." § 61.08(2)(i), Fla. Stat. (2014).

*Sherlock v. Sherlock,* 199 So. 3d 1039, 1043 (Fla. 4th DCA 2016).

It appears from the evidence that the net proceeds of the sale of the marital residence was a substantial sum, which the trial court equally divided between the parties. The portion of the proceeds awarded to Wife should be deemed available for generating investment income, absent proof the money was used to purchase a new residence. *See Hodge,* 129 So. 3d at 444. Thus, we agree with Husband that the trial court reversibly erred in its determination of the amount of alimony awarded to Wife

without determining the income she could receive from her share of the proceeds from the sale of the marital residence.

With respect to the portions of his TSP account, monthly pension, and post-retirement survivors' benefits awarded to Wife, Husband further argues that the trial court failed to consider the income that could be generated from those assets to support Wife after the marriage. However, review of the transcript does not reflect any competent substantial evidence concerning the rates of return on those assets or the revenue that Wife could obtain from investing those assets. The transcript does reflect that Husband began to testify concerning his investment funds, but Wife's objections to his testimony concerning performance of those funds and rates of return were sustained. No expert witness testimony was presented on this issue. Additionally, given that the trial court found that no evidence was presented to corroborate Husband's assertion that he would be retiring soon, it appears that any potential income Wife could earn from the portion of his retirement plan awarded to her would have been speculative. Thus, we determine the trial court did not err in failing to account for income from the investment account and the retirement plan. However, because we are remanding for a redetermination as to equitable distribution, which in turn requires a re-evaluation of the amount of alimony to which Wife is entitled, and because during the pendency of this appeal it appears Husband has retired, it is appropriate for the trial court on remand to consider the amount of income Wife can be expected to receive as to any investment accounts or retirement benefits awarded to her, assuming proper and credible evidence of value is presented.

*Insurance and Survivor Benefit to Protect Alimony*

"We review a trial court's imposition of a security requirement [to protect alimony] for an abuse of discretion." *Galstyan v. Galstyan*, 85 So. 3d 561, 566 (Fla. 4th DCA 2012).

Husband admitted at trial to having multiple life insurance policies, including one in the amount of $162,000. The trial court ordered that Husband would be required to secure his alimony obligations with life insurance, determining that he should continue paying for the policy with Wife being trustee and sole beneficiary of at least $162,000 in death benefits or, if his existing life insurance policies had a death benefit of more or less than that amount, then in the full sum of the death benefit of the current policies up to a maximum of $162,000.

In addition, in the final judgment, Wife was awarded one-half of Husband's pension plan, including a survivor benefit option for Wife. The

trial court noted that Husband did not object to Wife receiving the survivor benefit option. However, Husband did argue to the trial court that it would not make sense to have both the life insurance and the survivor benefit, since both would pay money upon his death.

On appeal, Husband argues that, in the absence of special circumstances, the trial court erred in requiring him to pay for both life insurance and a survivor benefit under his pension plan to secure the alimony award for Wife. In support of this position, Husband cites section 61.08(3), Florida Statutes, which provides:

> To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy *or* a bond, *or* to otherwise secure such alimony award with any other assets which may be suitable for that purpose.

§ 61.08(3), Fla. Stat. (2015) (emphases added). We have determined that, under the plain reading of this statute, "the trial court may choose to order a paying spouse to obtain a life insurance policy **or** a bond, but not both" to secure an award of alimony. *Galstyan*, 85 So. 3d at 565.

In this case, however, although the trial court awarded Wife both life insurance and the survivor benefit under Husband's pension plan, *it did not rule that both were for purposes of securing the alimony award*. Rather, the trial court explicitly found that the life insurance plan shall continue in order to secure the alimony award. In contrast, the trial court's determination that Wife was entitled to half of the marital portion of Husband's pension and the survivor benefit thereof, was part of the trial court's equitable distribution. In other words, the trial court made no finding that Wife's entitlement to the survivor benefit was for the purpose of securing her alimony award. As such, while it would be improper to award a survivor benefit in addition to an insurance policy to secure an alimony award, Husband's particular argument in this appeal that the trial court erroneously ordered both the life insurance and the survivor benefit *to secure the alimony award* is not supported by the record.

However, we agree with another argument raised by Husband concerning the award of the monthly survivor benefit attached to the retirement plan. Husband argues that the trial court failed to determine who should bear the cost of the survivor benefit, where the cost is a percentage of the gross pension. The trial court ruled as follows:

e. Husband further has an FSPS Pension with the State Department. Wife is entitled to 50% of the marital portion of that pension (accrued between the date of marriage (December 23, 1997) and the date of filing for divorce (December 19, 2014)) and shall include the survivor benefit option for the Wife. Husband did not object to the Wife receiving the survivor benefit option. Within thirty (30) days of the execution of this Final Judgment, Husband shall sign all forms necessary to ensure Wife's share of Husband's pension is transferred to her and that the survivor benefit option is elected.

We have explained that "[s]urvivor benefits in pensions are considered marital property." *Diaz v. Diaz*, 970 So. 2d 429, 431 (Fla. 4th DCA 2007) (finding that the trial court erred in failing to include the value of the pension survivor benefits). In *Diaz*, we determined that "[t]he survivor benefits, which were assigned to the former wife . . . , were marital property that should have been included in the valuation of assets and failure to do so resulted in an inequitable distribution of assets." *Id.* Thus, Husband argues that the trial court erred when it failed to value the survivor benefit as an asset to Wife, and also failed to account for the cost thereof, and determine which party should bear that cost.

Notably, the transcript reflects that Husband presented evidence concerning this issue. Specifically, he testified that the defined survivor benefit would be a specific amount per month, with an associated cost of 10% of the annuity amount. Based on such evidence, we conclude that Husband is correct in that the trial court failed to account for the value and cost of the survivor benefit. Thus, we reverse the portion of the final judgment requiring Husband to pay the cost of the survivor benefit of his retirement plan for failure to make appropriate findings. On remand, the trial court shall make the appropriate determinations as to the value of the survivor benefit, if awarded as equitable distribution, and determine which party should bear that cost.

With regard to Husband's argument that the trial court failed to make any findings of special circumstances to justify the need to secure the alimony award with life insurance, we have explained that:

> A trial court may order life insurance to protect child support and alimony. *Sobelman v. Sobelman*, 541 So. 2d 1153 (Fla. 1989). Such an award, however, is not automatic. *It "is justified only if there is a demonstrated need to protect the*

*alimony recipient."* Privett v. Privett, 535 So. 2d 663, 665 (Fla. 4th DCA 1988).

*Hedendal v. Hedendal*, 695 So. 2d 391, 392 (Fla. 4th DCA 1997) (emphasis added). "In the absence of special circumstances, a spouse cannot be required to maintain life insurance for the purposes of securing support obligations." *Baker v. Baker*, 763 So. 2d 493, 494–95 (Fla. 4th DCA 2000). Additionally,

> *if a trial court orders a spouse to obtain life insurance, then it must make "specific findings as to the availability and cost of the policies and the impact of such cost on the husband." Norman v. Norman,* 939 So. 2d 240, 241 (Fla. 1st DCA 2006); *Davidson v. Davidson,* 882 So. 2d 418, 421 (Fla. 4th DCA 2004) (reversing and remanding the portion of a final judgment ordering the spouse to obtain life insurance because the trial court failed to make factual findings concerning the cost of the policy or the spouse's ability to obtain or pay for it). "An order requiring a spouse to maintain a life insurance policy to secure alimony 'is justified only if there is a demonstrated need to protect the alimony recipient.'" Forgione v. Forgione,* 845 So. 2d 968, 969 (Fla. 4th DCA 2003) (quoting *Moorehead v. Moorehead,* 745 So. 2d 549, 552 (Fla. 4th DCA 1999)). *The "demonstrated need" must be supported by competent, substantial evidence. Id.* at 969–70.

*Galstyan*, 85 So. 3d at 565–66 (emphases added).

Review of the trial court's findings in this case does not reflect any finding that there was a demonstrated need to protect Wife's alimony award. Notably, although Wife argues special circumstances did exist in this case, namely, Husband's prior contempt orders for failing to abide by prior temporary support obligations and the fact that the insurance policy was already in place and affordable to Husband, the trial court nevertheless failed to make such findings in justifying its ruling. Absent such a finding of special circumstances, Husband is correct that the trial court failed to make the requisite findings to justify the requirement that he secure the alimony award with a life insurance policy. We reverse on this issue for the trial court to determine whether special circumstances require that Wife's award of alimony be secured by life insurance, and if so, make the required findings under the caselaw.

11

*Conclusion*

We affirm the trial court's rulings, except for the following matters: (1)(a) equitably distributing as marital assets to Husband a brokerage account and three retirement accounts, even though they had been liquidated and spent prior to the final hearing, and (b) equitably distributing to Wife a survivor benefit attached to Husband's pension, without determining the value of the survivor benefit and who bears the cost of the benefit; (2) awarding Wife an amount of permanent periodic alimony without determining the income she could receive from her share of the proceeds from the sale of the marital residence and liquid assets distributed to her; and (3) failing to make findings to support the order requiring Husband to maintain life insurance to secure the award of alimony to Wife. On remand, the trial court may entertain additional evidence to resolve and adjust the equitable distribution of marital assets and liabilities and to make appropriate determinations as to the errors identified regarding the amount of alimony awarded to Wife and the need to secure the alimony award.

*Affirmed in part, reversed in part, and remanded with instructions.*

FORST, J. and GILLESPIE, KENNETH, Associate Judge, concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***