530 So.2d 1064 (1988)
Jerry M. BROGDON, Appellant,
v.
Lanoel M. BROGDON, Appellee.
No. 87-1433.
District Court of Appeal of Florida, First District.
September 8, 1988.
John P. Townsend, of Chesser, Wingard, Barr & Townsend, Ft. Walton Beach, for appellant.
Patricia Strickland Warren, Ft. Walton Beach, for appellee.
THOMPSON, Judge.
The former husband appeals a final judgment of dissolution of marriage. We reverse.
The parties were married in 1947, separated in 1986 and divorced in 1987. For most of the time during the marriage the wife stayed home to care for the parties' seven now-grown children, and did not engage in any significant outside employment. At the time of the final hearing, the wife was 58 and the husband was 62. The *1065 wife is approximately 70 pounds overweight, has hypertension, has had aortic valve surgery, and continues to suffer from an arrythmic heart condition. She takes multiple medications, including antihypertensives, antiarrythmics, and sedatives to reduce stress. The wife has a high school diploma, and has obtained a small number of college credits from a local junior college. After the separation of the parties, but prior to the final hearing, the wife participated in the displaced homemaker's program, through which she found some temporary light work, and she later found a temporary job as an overnight sitter for an elderly woman. She and her doctor both testified that she is not physically capable of handling an ordinary full-time job, but that she is capable of handling some types of sedentary or part-time employment. The wife's financial affidavit reflected zero income and monthly expenses of $1,025. The affidavit does not accurately reflect the wife's post-divorce expenses in that it lists as expenses several items (for example, property taxes and mortgage payments) which have become the husband's sole responsibility under the terms of the final judgment.
The husband suffers from rheumatoid arthritis, and is medically retired from his civil service job. He began working for the government in 1951 or 1952, and quit in 1979 when he was approximately 55 years old. He has a home workshop where he repairs electric appliances for himself and his acquaintances. However, he testified that his ability to work with his hands is limited by his arthritis, and that he earns an average of only $75 per month doing such repair work. The husband's financial affidavit reflects total income of $1,150 and expenses of $1,000.
Real properties owned by the parties were two waterfront lots (each with a mobile home) in Niceville, a seven bedroom marital residence, and two five acre lots in Mossey Head, on one of which there is a mobile home. The marital residence, valued at $63,000, is paid for. The Niceville lots and homes, valued at $75,000, are paid for. The Mossey Head property, valued at $14,000, is subject to an $11,000 mortgage.
In the final judgment, the Niceville property was awarded to the wife, and the marital residence and Mossey Head properties were awarded to the husband. The husband was made responsible for the indebtedness on the Mossey Head property and the wife was awarded one-half of the husband's pension as an equitable distribution of the marital property, plus $1.00 per month as permanent periodic alimony. As additional permanent periodic alimony, the husband was ordered to maintain health insurance for the wife. There was some evidence suggesting that the wife and husband were covered by the husband's group health policy prior to divorce, but no evidence as to whether the coverage can be maintained or converted to cover the wife after divorce. There was also a lack of evidence as to the cost of such conversion, or as to what health insurance for the wife would cost if purchased on the open market. The husband was ordered to acquire a $100,000 life insurance policy as security for the payment of the alimony, and to maintain the insurance policy for so long as his alimony obligation continues. Again, there was an absence of evidence as to the availability and cost of such insurance. Finally, the husband was ordered to pay the wife's attorney's fees.
The husband contends the trial court erred in the following respects: (1) in awarding the wife a 50 percent share of the husband's disability pension; (2) in ordering the husband to acquire and maintain life insurance as security for his alimony obligation; (3) in awarding alimony where it had already awarded the wife one-half of the husband's disability pension; and (4) in ordering the husband to pay the wife's attorney's fees. We agree and reverse.
Although it is undisputed that the husband's pension is denominated a "disability" pension, it appears, based on the record evidence, that at least some portion of the pension may actually constitute deferred compensation for the husband's more than 25 years of service to his employer, and thus could be more accurately described as a retirement benefit. Disability *1066 benefits received as compensation for pain and suffering, disability, disfigurement, etc. are not marital assets, and such disability benefits are not subject to equitable distribution. Weisfeld v. Weisfeld, 513 So.2d 1278 (Fla. 3d DCA 1987); Freeman v. Freeman, 468 So.2d 326 (Fla. 5th DCA 1985). Accordingly, in a determination of an equitable distribution of the marital assets on remand, if the husband's pension is to be considered then a determination must be made as to what portion of the pension represents compensation for pain and suffering, disability and disfigurement, and what portion, if any, represents retirement pay. Only that portion of the pension which in reality constitutes a retirement benefit may be considered as a marital asset subject to equitable distribution. The award to the wife of 50 percent of all of the "disability" pension is reversed.
In the determination of an equitable distribution of the assets and an award of alimony, if all or a portion of the husband's pension benefits are determined to be a marital asset then any portion of the pension benefits awarded to the wife must be taken into consideration in determining the amount of alimony awarded. It was error, and an abuse of discretion under the Canakaris[1] standard, for the court to award the wife one-half of the husband's disability pension (which, for all practical purposes is his sole source of income) and then to award alimony in addition. It was also an abuse of discretion for the trial court to order the husband to acquire and maintain a life insurance policy in the amount of $100,000 as security for his alimony obligation. Even though the actual amount of the alimony award cannot be determined because of the absence of evidence of the cost of health insurance for the wife, the amount is obviously so small as to render unreasonable the requirement that the husband maintain a $100,000 life insurance policy as security for the payment of alimony. Finally, we find that it was error for the court to order the husband to pay the wife's attorney's fees under the circumstances of this case, in that the wife received the larger part of the marital assets, receives more income than the husband after the deduction of expenses, and is in a much better financial position to pay her own attorney's fees than is the husband.
REVERSED and REMANDED.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1982).