965 So.2d 1217 (2007)
Steven GAFFNEY, Appellant,
v.
Marie Claude GAFFNEY, Appellee.
No. 4D06-1074.
District Court of Appeal of Florida, Fourth District.
September 26, 2007.
Rehearing Denied October 29, 2007.
*1219 Nicholas T. Gentile of Nicholas T. Gentile, P.A., Pompano Beach, for appellant.
Douglas H. Reynolds and Sean L. Collin of Adorno & Yoss LLP, Fort Lauderdale, for appellee.
SHAHOOD, C.J.
This opinion addresses the appeal by Steven Gaffney ("Husband"), and cross-appeal by Marie Claude Gaffney (now known as Martel) ("Wife") from a final judgment of dissolution of marriage. We reverse the award of lump-sum alimony to Wife because the portion of Husband's pension accumulated during the marriage was subject to equitable distribution to the extent it did not represent compensation for disability. We affirm the denial of the motion for rehearing and to supplement the pleadings that Husband filed based on an antenuptial agreement.
Husband and Wife were married in 1991. There were no children of the marriage. Husband was employed by the Broward Sheriff's Office during most of the marriage until he retired in March 2002. Husband retired under the disability election, and began receiving benefits from the Florida Retirement System ("FRS").
Husband filed for dissolution in June 2004 on the grounds that the marriage was irretrievably broken. Wife filed an answer and counter-petition for dissolution in which she sought alimony. Husband subsequently filed an answer.
In his mandatory disclosures pursuant to rule 12.285, Florida Family Law Rules of Procedure, Husband represented that no prenuptial agreement existed. Wife was asked during her deposition if she and Husband signed a prenuptial agreement. Wife remembered signing one, but stated that it remained in Husband's possession and she did not have a copy. Wife could not remember the terms. Husband did not amend his pleadings to allege the existence of a prenuptial agreement.
Husband was 56 years old at the time of trial. His monthly retirement benefit from FRS was $4,223.50. Additionally, Husband received worker's compensation in the amount of $2,661 per month, and $1,600 from Social Security per month. Altogether, Husband was receiving approximately $100,000 per year from these various sources of income. Wife was 46 years old at the time of trial. She had worked as a branch manager at Colonial Bank since May 1998. Wife earned $55,000 in 2004 and approximately $65,000 per year at the time of trial.
Wife's expert, a financial planner certified in divorce planning, testified regarding FRS, and specifically husband's FRS pension benefits. FRS is a defined benefit pension plan. Employees accrue benefits under the plan based on service credits corresponding to the number of years they have worked. Husband's normal retirement age under the FRS would have been age 55. However, due to Husband's disability, he was able to begin receiving his monthly pension payments approximately two years earlier. Husband's disability did not enhance his number of credits under the FRS, and therefore did not increase the amount of the monthly benefit Husband receives. It just gave him the benefit of being able to get the money approximately two years early.
Wife's expert calculated the marital component of the retirement plan as $466,099. She arrived at this amount by dividing the 10.58 years of service credits Husband accumulated during the marriage by the total service credits Husband earned, 24.82 years. The expert then applied this to the total value of the husband's *1220 pension benefit ($1,094,130) to arrive at $466,099. Wife's expert testified that the $466,099 figure was based upon the former husband's work, not from being disabled.
After trial but before the court issued the final judgment, Husband filed a motion for rehearing and a motion to file supplemental pleading. Husband's motion for rehearing alleged that while preparing the marital home for sale approximately one month after the last day of trial, Husband found the original antenuptial agreement which was believed to have been lost. The antenuptial agreement prohibited Wife from asking for or receiving alimony. The trial court denied Husband's motions.
The trial court rendered final judgment on February 15, 2006. Consistent with the testimony of Wife's expert, the trial court found that the value of the pension accrued during the marriage was $466,099. Importantly, the court found that Husband's FRS pension was a "Disability Retirement Pension," and therefore a non-marital asset not subject to equitable distribution. The court found that "by converting the FRS Retirement Pension to an FRS Disability Retirement Pension, the Husband has changed the nature of this asset from a marital asset to an [sic] non-marital asset."
The court reasoned that Wife would not need permanent alimony if she were receiving part of the pension through equitable distribution, but that Husband's conversion of the pension to a disability pension prevented it. The court awarded Wife lump-sum alimony on the theory that Husband's conversion of his pension from a FRS Retirement Plan to a FRS Disability Retirement Plan was a "unique and special circumstance" justifying lump-sum alimony. The trial court ordered Husband to pay Wife lump-sum alimony in the amount of $233,099 to be paid in monthly installments of $900.
Husband argues that the trial court erred in granting lump-sum alimony to Wife because the purpose of the lump-sum alimony award was to equitably distribute his disability payment, which he contends is a non-marital asset. On cross-appeal, Wife claims that the trial court erred in ruling that Husband's interest in the FRS was a non-marital asset and not subject to distribution. Specifically, Wife argues the court erred in concluding that Husband's acquisition of disability status converted an otherwise marital asset to a non-marital asset.
"The nature and amount of an award of alimony is a matter committed to the sound discretion of the trial court." Ryan v. Ryan, 927 So.2d 109, 112 (Fla. 4th DCA 2006) (citations omitted). The standard of review of an award of lump sum alimony is abuse of discretion. Id. However, a trial court's conclusion of law that an asset is a marital asset is subject to de novo review. Williams v. Williams, 935 So.2d 54, 55 (Fla. 1st DCA 2006).
The relevant case law supports Wife's assertion that the trial court's characterization of Husband's pension as a non-marital asset was erroneous. In Davidson v. Davidson, 882 So.2d 418, 420 (Fla. 4th DCA 2004), this court discussed the character of pensions for equitable distribution purposes:
A retirement pension is considered a marital asset for purposes of equitable distribution. See Blaine v. Blaine, 872 So.2d 383 (Fla. 4th DCA 2004). On the other hand, a disability pension "by its very nature replaces future lost income, and thus is not a marital asset subject to equitable distribution." Hoffner v. Hoffner, 577 So.2d 703, 704 (Fla. 4th DCA *1221 1991); see also Hanks v. Hanks, 553 So.2d 340, 343 (Fla. 4th DCA 1989).
The determination whether any portion of a disability pension is a marital asset requires the trial court to examine its basis:
When a disability pension is involved, the trial court must determine "what portion of the pension represents compensation for pain and suffering, disability and disfigurement, and what portion, if any, represents retirement pay." Brogdon v. Brogdon, 530 So.2d 1064, 1066 (Fla. 1st DCA 1988). Only the retirement portion is subject to equitable distribution. Id.; cf. Weisfeld v. Weisfeld, 545 So.2d 1341, 1345-46 (Fla. 1989) (employing analytical approach focusing on purpose of personal injury compensation to determine what portion is marital property).
Rumler v. Rumler, 932 So.2d 1165, 1166 (Fla. 2d DCA 2006) (reversing for trial court to determine what portion of pension was disability excluded from equitable distribution); see also Brogdon, 530 So.2d at 1065-66 (remanding for determination of what portion of husband's pension was disability and what portion was retirement pay, where evidence indicated some portion was retirement despite pension's "disability" designation).
In Hoffner v. Hoffner, 577 So.2d 703 (Fla. 4th DCA 1991), this court addressed a trial court's determination whether any part of the husband's disability pension was a marital asset. There was no proof that the disability pension at issue in that case had any component identifiable as a marital asset. 577 So.2d at 704. We held that such a pension "may be a source of alimony . . . [but] not a marital asset subject to equitable distribution." Id.
The opposite situation is true in the present case. The trial court made findings, supported by the record, that Husband's disability was not a factor in the amount of monthly benefit he receives. The only effect of Husband's disability was that he was able to receive his retirement benefits two years early. Despite its "disability pension" designation, the marital portion of Husband's pension was a marital asset subject to equitable distribution to the extent it does not represent actual compensation for disability. Rumler,[1]Hoffner, and the other cases discussed herein hold that a marital component may still exist in a disability pension.
The trial court erroneously reasoned that Husband's designation of the pension as a disability pension put it off-limits for equitable distribution purposes. For the reasons discussed above, we reverse the trial court's award of lump-sum alimony to Wife and remand for the trial court to award Wife her portion of the pension in equitable distribution.
We affirm the trial court's denial of Husband's motion for rehearing and motion to file supplemental pleading, which were based on the antenuptial agreement. A trial court's decision on a motion for rehearing is reviewed for an abuse of discretion. Pangilinan v. Broward County, 914 So.2d 1094 (Fla. 4th DCA 2005). The purpose of a motion for rehearing is "to give the trial court an opportunity to consider matters which it overlooked or failed to consider . . . and to correct any error if it becomes convinced that it has erred." Carollo v. Carollo, 920 So.2d 16, 19 (Fla. 3d DCA 2004).
The record shows that the trial court did not "overlook" or "fail to consider" the *1222 antenuptial agreement. Rather, despite knowledge of its existence, Husband decided not to rely on the agreement at all during eighteen months of litigation other than to ask a few questions at trial in an attempt to establish a course of bad behavior on the part of Wife. The trial court could not have found that it erred in ruling regarding an antenuptial agreement that Husband by his own admission did not put before the court. The trial court did not commit an abuse of discretion in denying Husband's motion for rehearing. Additionally, Husband knew of the existence of the antenuptial agreement. His finding the document later is therefore insufficient to serve as an event or occurrence upon which he may supplement his pleadings. See Fla. R. Civ. P. 1.190(d).
Affirmed in part, Reversed in part, and Remanded.
STEVENSON, J., and BELANGER, ROBERT E., Associate Judge, concur.
NOTES
[1] We note that the trial court did not have the benefit of Rumler at the time it rendered final judgment.