WALLACE, Judge.
 

 Mark H. Gibbons (the Husband) raises multiple challenges to the provisions of the final judgment that dissolved his marriage to Martha Lee James Gibbons (the Wife). The Wife cross-appeals. Two issues warrant discussion: (1) the trial court’s award to the Wife of one-half of the benefits payable under the Husband’s private disability insurance policies after the Husband reaches the age of sixty-five (the post-65 disability benefits) and (2) the trial court’s decision to classify as nonmarital the Wife’s indebtedness on certain shareholder loans made to her from the parties’ closely held corporation before the filing of the petition for dissolution of marriage.
 

 I. THE HUSBAND’S DISABILITY POLICIES
 

 A. The Factual Background
 

 The parties were married in 1976. The Husband is a member of The Florida Bar and worked as an attorney in Tampa until he became disabled. The Wife is a teacher and librarian at a middle school.
 

 
 *129
 
 The parties separated in 2002, but the petition for dissolution of marriage was not filed until February 7, 2006. The final judgment was entered on October 16, 2007. On the date of the entry of the final judgment, the Husband was fifty-five years old and the Wife was fifty-six.
 

 The Husband is disabled as a result of a medical condition. The onset of the Husband’s medical condition occurred in 1994, but he continued to work as an attorney until 2000. The Husband has been receiving disability benefits since 1994.
 

 Before the inception of his disabling medical condition, the Husband wisely purchased three separate disability insurance policies — one with Monarch Life Insurance Company and two with Unum.
 
 [1]
 
 At the time of the final hearing, the Husband was receiving $2100 per month from the Monarch policy and $648.60 per month from each of the Unum policies.
 

 The payments from the Monarch policy are scheduled to terminate when the Husband reaches the age of "sixty-five years. The Unum policies have a different structure. Unlike the Monarch policy, the benefits payable under the Unum policies do not automatically terminate when the Husband reaches a specific age. The Husband testified that the benefits payable under the Unum policies continue “indefinitely,” subject to the condition that he remains disabled. The policies were not introduced into evidence.
 

 B. The Trial Court’s Ruling
 

 After the final hearing, the trial court classified the Husband’s three private disability policies as marital property and made the following detailed ruling concerning them:
 

 The husband’s disability policies are marital property. They were contracted during the marriage, and premiums were paid from marital funds. The wife argues the court should separate the “pain and suffering” value of the proceeds from the “retirement” value of the proceeds, citing
 
 Rumler v. Rumler,
 
 932 So.2d 1165 (Fla. 2d DCA 2006).
 
 Rumler,
 
 however, provides scant guidance in this case, because the contractual disability policies here are different in nature than the city of Homestead retirement plan implicated in
 
 Rumler.
 
 Contractual disability policies are strictly economic, intended to cover lost earnings, with no component of compensation for pain and suffering. This fact distinguishes
 
 Freeman v. Freeman,
 
 468 So.2d 326 (Fla. 5th DCA 1985), cited by the husband.
 

 Some of these disability policies continue beyond normal retirement age, on the theory that the disabled person could have contributed to a retirement plan and become entitled to retirement payments had he remained working. Some policies stop benefits at retirement age, on the theory that the income replacement benefit was sufficient that the recipient could contribute to his own retirement fund. The husband in this case had two policies of the first kind, and one of the second. Following
 
 Rum-ler
 
 and its implications for this case, the income from the policies from now until the husband reaches 65, while arguably a marital asset, is the reason the wife cites for denial of the husband’s alimony claim: that he has this income and therefore no “need” for alimony purposes. Since these payments exist to replace income lost due to [the] husband’s disability, the court treats the
 
 *130
 
 payments as if they were income, rather than an asset. Not so with the payments arriving after the husband reaches age 62.[
 
 2
 
 ] The right to receive those payments in the future is the very definition of a retirement plan, subject to equitable distribution under section 61.076(1). Once the husband reaches age 62, the wife is entitled to half of each disability policy benefit payment.
 

 Based on this ruling, the trial court ordered that “[o]nce the Husband reaches the normal retirement age of 65, the Wife shall receive one-half of each disability policy benefit payment, either directly, if possible, or, if not, by immediate payment to her by the Husband upon his receipt of each payment.”
 

 Because the benefits payable under the Monarch policy are scheduled to terminate when the Husband reaches the age of sixty-five, the final judgment does not impact that policy. The effect of the trial court’s order is to give the Wife one-half of the benefits payable under the two Unum policies once the Husband reaches the age of sixty-five.
 

 C. The Parties ’ Arguments
 

 On appeal, the Husband challenges the award of one-half of the post-65 disability benefits to the Wife. The Husband argues that his disability policies are not marital assets. He also points out that there is no competent, substantial evidence in the record that any portion of the benefits payable under his disability policies represents or is a substitute for retirement benefits.
 

 In response, the Wife argues that the disability policies are marital assets under section 61.075(5)(a)(4), Florida Statutes (2005), because they were purchased with marital funds. According to the Wife, the trial court properly concluded that the post-65 disability benefits are retirement benefits — not payments on account of the Husband’s disability — because sixty-five is the normal age of retirement.
 

 D. Discussion
 

 Generally speaking, an employer-sponsored disability pension does not constitute a marital asset subject to equitable distribution.
 
 See Gay v. Gay,
 
 573 So.2d 180, 180 (Fla. 2d DCA 1991) (holding that a disabled spouse’s disability plan was not a marital asset) (citing
 
 Freeman v. Freeman,
 
 468 So.2d 326, 328 (Fla. 5th DCA 1985) (holding that a disability pension designed to compensate an employee for lost earnings and injuries (including pain and suffering) sustained on the job was not a marital asset));
 
 Hoffner v. Hoffner,
 
 577 So.2d 703, 704 (Fla. 4th DCA 1991) (concluding that the husband’s disability pension was not a marital asset subject to equitable distribution). Similarly, where the money that h disabled spouse receives from disability benefits from a private disability policy constitutes payment for future lost wages based on the disabled spouse’s inability to work, the disability policy is a nonmarital asset not subject to equitable distribution.
 
 See Kay v. Kay,
 
 988 So.2d 1273, 1275 (Fla. 5th DCA 2008).
 

 On the other hand, retirement benefits are subject to equitable distribution.
 
 See Smith v. Smith,
 
 934 So.2d 636, 640 (Fla. 2d DCA 2006). As this court has recently noted:
 

 “[A] spouse’s entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property.”
 
 *131
 

 Acker v. Acker,
 
 904 So.2d 384, 386 (Fla.2005) (quoting
 
 Diffenderfer v. Diffenderfer,
 
 491 So.2d 265, 270 (Fla.1986));
 
 see also
 
 § 61.075(5)(a)(4), Fla. Stat. (2003) (defining “marital assets” to include “[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs”); § 61.076(1) (“All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution.”);
 
 Reyher v. Reyher,
 
 495 So.2d 797, 799 (Fla. 2d DCA 1986).
 

 Rumler v. Rumler,
 
 932 So.2d 1165, 1166 (Fla. 2d DCA 2006) (alterations in original). Thus benefits payable to a disabled spouse will be treated differently for purposes of equitable distribution depending upon whether the benefits are characterized as disability benefits or as retirement benefits.
 
 See id. See generally
 
 Kenneth Strauss,
 
 Characterization for Purposes of Divorce: Retirement Pension Benefits vs. Disability Benefits,
 
 11 J. Contemp. Legal Issues 234 (2000) (discussing the disparate treatment of retirement and disability benefits in divorce).
 

 The difference in the treatment of disability benefits and retirement benefits for the purpose of equitable distribution requires careful analysis where a disability pension or private disability policy is at issue. As one court has noted:
 

 [Disability benefits may serve multiple purposes. They may compensate for the loss of earnings resulting from compelled premature retirement and from a diminished ability to compete in the employment market. Disability benefits may also serve to compensate the disabled person for personal suffering caused by the disability. Finally, disability benefits may serve to replace a retirement pension by providing support for the disabled worker and his family after he leaves the job.
 

 Ciliberti v. Ciliberti,
 
 374 Pa.Super. 228, 542 A.2d 580, 582 (1988). Thus, reaching a correct result relative to the equitable distribution of “disability benefits” requires looking beyond labels to the character and purpose of the benefit under review.
 
 See id.;
 
 Strauss,
 
 supra,
 
 at 239.
 

 Because of the multiple purposes that may be served by disability benefits, the Florida courts employ an analytical approach to determining whether any portion of such benefits actually constitutes retirement benefits subject to classification as marital property. The analytical approach looks to the nature and purpose of the benefits at issue:
 

 When a disability pension is involved, the trial court must determine “what portion of the pension represents compensation for pain and suffering, disability and disfigurement, and what portion, if. any, represents retirement pay.”
 
 Brogdon v. Brogdon,
 
 530 So.2d 1064, 1066 (Fla. 1st DCA 1988). Only the retirement portion is subject to equitable distribution.
 
 Id.; cf. Weisfeld v. Weisfeld,
 
 545 So.2d 1341, 1345-46 (Fla.1989) (employing analytical approach focusing on purpose of personal injury compensation to determine what portion is marital property).
 

 Rumler,
 
 932 So.2d at 1166.
 
 See generally Disability Benefits
 
 — Classification, 14 No. 9 Equitable Distribution J. 97 (1997) (sum-' marizing the classification of disability benefits obtained through employment and from private insurance policies).
 

 To date, the reported Florida cases applying the analytical approach to a consideration of whether any portion of disability benefits payable to a disabled spouse con
 
 *132
 
 tains a retirement component have arisen in the context of employer-sponsored disability plans.
 
 See, e.g., Rumler,
 
 932 So.2d at 1166-67 (municipal police disability pension);
 
 Gaffney v. Gaffney,
 
 965 So.2d 1217, 1220-21 (Fla. 4th DCA 2007) (Florida Retirement System benefits);
 
 Davidson v. Davidson,
 
 882 So.2d 418, 420 (Fla. 4th DCA 2004) (retirement pension converted to a disability pension);
 
 Brogdon v. Brogdon,
 
 530 So.2d 1064, 1065-66 (Fla. 1st DCA 1988) (civil service disability pension). As the trial court noted in its order, different considerations arise in cases involving private disability policies than in cases involving employer-sponsored plans.
 
 [3]
 
 However, the trial court fell into' error when it relied exclusively on the recognition of sixty-five as the normal age of retirement for workers in the United States
 
 [4]
 
 as the basis for its conclusion that the Husband’s right to receive the post-65 disability benefits “is the very definition of a retirement plan.”
 

 Disability insurance may be defined as “[c]overage purchased to protect a person from a loss of income during a period of incapacity for work.”
 
 Black’s Law Dictionary
 
 816 (8th ed. 2004). Private disability insurance policies such as the ones at issue in this case are “designed to provide a substitute for earnings when the insured is deprived of his capacity to earn by bodily injury or disease.”
 
 Hill v. New York Life Ins. Co.,
 
 38 Cal.App.2d 627, 101 P.2d 752, 755 (1940). Thus true disability benefits payable to a disabled spouse after the dissolution of the marriage represent a substitute or replacement for the loss of future earnings.
 

 Compensation payable for future lost earnings is the separate property of the injured or disabled spouse.
 
 See White v. White,
 
 705 So.2d 123, 124 (Fla. 2d DCA 1998);
 
 Bollaci v. Nieporte-Bollaci,
 
 863 So.2d 440, 442 (Fla. 4th DCA 2003). Thus, to the extent that benefits payable under a private disability policy represent a substitute for future lost income, such benefits are the separate property of the disabled spouse. Accordingly, such disability benefits are not a marital asset and are not subject to equitable distribution.
 
 See Kay,
 
 988 So.2d at 1275.
 

 Here, the Husband testified that the disability benefits payable under the Unum policies would continue “indefinitely.” However, the Husband also testified that the continued payment of these benefits is subject to the condition that he remains disabled. This testimony was un-rebutted. The policies themselves were not introduced into evidence. Furthermore, there was no evidence before the trial court that the post-65 disability benefits contained a retirement component. In the absence of any evidence to the contrary, the Husband’s testimony that the payment of the post-65 disability payments was subject to the condition that he remains disabled established that those benefits were to be paid on account of his disability as a replacement for the loss of his future income. It follows that the post-65 disability benefits were the Husband’s separate property and were not subject to equitable distribution.
 
 See id.; see also Hoffner,
 
 577 So.2d at 704 (holding that in the absence of proof that the payments on
 
 *133
 
 the husband’s disability pension had any component which could be identified as a marital asset, the pension was not a marital asset subject to equitable distribution);
 
 Gragg v. Gragg,
 
 12 S.W.3d 412, 419 (Tenn.2000) (holding that where there was no evidence that the private disability benefits payable to the husband after he reached the age of sixty-five were intended to be supplemental retirement funds and where the evidence also showed that the continuation of the benefits after the husband reached the age of sixty-five was subject to the condition that the husband remained unable to work, the disability benefits were a replacement for the husband’s future income lost due to his disability and were not marital property).
 

 For these reasons, we agree with the Husband that there was no competent, substantial evidence in the record supporting the trial court’s conclusion that the post-65 disability benefits were retirement benefits subject to equitable distribution under section 61.076(1). Accordingly, we reverse the portion of the final judgment awarding the Wife one-half of the post-65 disability benefits.
 

 II. THE WIFE’S SHAREHOLDER LOANS
 

 The parties each owned shares in a closely-held corporation called Lee Groves, Inc. The Wife owned 96.48% of the shares in Lee Groves; the Husband owned the remaining 3.52%. The trial court found that each party’s shares in the corporation were nonmarital.
 

 On the date of the filing of the petition for dissolution of marriage, the Wife had loans outstanding from Lee Groves in the amount of $62,440.39. After the filing of the dissolution petition, the Wife borrowed additional amounts from the corporation. The Wife testified that she had used the funds borrowed from the corporation to pay the family’s living expenses. In this regard, we note that the parties had two children. After the parties separated in 2002, the children resided with the Wife in the marital home.
 
 [5]
 

 The trial court classified all of the Wife’s shareholder loans from Lee Groves as non-marital debt. On her cross-appeal, the Wife argues that the trial court erred in failing to classify the $62,440.39 that she had borrowed before the filing of the petition as a marital liability.
 

 We agree with the Wife. The parties did not have a valid separation agreement. Therefore, the date of the filing of the petition was the “cut-off date” for determining the marital classification of assets and liabilities. § 61.075(6);
 
 Rao-Nagineni v. Rao,
 
 895 So.2d 1160, 1161 (Fla. 4th DCA 2005). The trial court erred in failing to classify the Wife’s shareholder loans as a marital debt to the extent of the $62,440.39 borrowed before the petition was filed.
 
 See
 
 § 61.075(5)-(7);
 
 Alpert v. Alpert,
 
 886 So.2d 999, 1003 (Fla. 2d DCA 2004);
 
 Martin v. Martin,
 
 816 So.2d 185, 186 (Fla. 1st DCA 2002). We are not persuaded by the Husband’s argument that as the majority shareholder of Lee Groves, the Wife was not obligated to repay the shareholder loans to the corporation.
 

 Accordingly, we reverse the final judgment to the extent that it failed to classify as a marital debt the $62,440.39 that the Wife had borrowed before the filing of the petition. Here, as in
 
 Alpert,
 
 we note that the trial court divided the parties’ marital assets and liabilities equally. Accordingly,
 
 *134
 
 on remand, “the trial court shall revisit the equitable distribution scheme in order to achieve an equal division of the parties’ marital assets and liabilities.”
 
 Alpert,
 
 886 So.2d at 1003.
 

 In all other respects, the final judgment is affirmed.
 

 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 

 WHATLEY,
 
 [6]
 
 J., and MORRIS, ROBERT J., JR., Associate Judge, Concur.
 

 [1]
 

 . The vouchers in the record that correspond to the Unum payments reflect the name of the payer as Provident Life and Accident Insurance Company.
 

 [2]
 

 . On the Husband's motion, the trial court amended its ruling in the final judgment to provide that payment of one-half of the Husband's disability benefits to the Wife would begin when the Husband reaches age sixty-five instead of age sixty-two.
 

 [3]
 

 . For a discussion of the different considerations involved in applying the analytical approach to employer-sponsored disability plans and private disability policies, see
 
 Saslow v. Saslow (In re Marriage of Saslow),
 
 40 Cal.3d 848, 221 Cal.Rptr.546, 710 P.2d 346, 350-53 (1985).
 

 [4]
 

 .
 
 See Pimm v. Pimm,
 
 601 So.2d 534, 537 (Fla.1992) ("The age of sixty-five years has become the traditional and presumptive age of retirement for American workers ....").
 

 [5]
 

 . The older child reached the age of majority after the parties separated but before the filing of the petition for dissolution of marriage.