# Third District Court of Appeal

## State of Florida

Opinion filed January 6, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1705
Lower Tribunal No. 16-1452
_____


**Bennett David Frank,**
Appellant/Cross-Appellee,

vs.

**Marsha Kay Frank,**
Appellee/Cross-Appellant.


An Appeal from the Circuit Court for Miami-Dade County, Bernard S. Shapiro, Judge.

Marks & West, P.A., and Evan R. Marks and Carolyn W. West, for appellant/cross-appellee.

Lorenzen Law, and Dirk Lorenzen, for appellee/cross-appellant.


Before FERNANDEZ, LOGUE and GORDO, JJ.

LOGUE, J.

Bennett David Frank, the former husband, appeals a judgment for Marsha Kay Frank, the former wife, arguing the trial court failed to make the factual findings necessary to support its determination of equitable distribution and alimony. The former wife cross-appeals the trial court's apportionment to her of 25% of a lien on the marital home stemming from fines allegedly incurred as a result of the former husband's actions. Regarding the absence of adequate factual findings, we agree with the former husband and therefore reverse and remand. We affirm in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were married for over twenty years when the former wife filed for dissolution in 2016. They have six children.[1] The couple was married in Missouri. Before the marriage, the former wife worked as a physical therapist and the former husband worked as a neurologist. After the marriage, the wife largely worked at home managing the children and house. Four years into the marriage, the former husband suffered a heart attack. He was 39. The former wife was then pregnant with their fourth child. After his heart attack, the former husband worked fewer hours in his neurology practice. He began receiving disability payments under a disability income policy obtained during the marriage.

---

[1] Four of the children were minors at the time of the petition for dissolution. By the time of trial, only two children remained as minors.

In 2011, the parties moved to Florida. In 2012, they purchased a house in Miami Beach (the "Meridian Home") for $1.6 million. In Florida, the former husband worked as a neurologist at the Veteran's Administration hospital in West Palm Beach. The former wife initially stayed home to care for the children but later returned to work as a physical therapist. In the years leading up to the trial, the husband's annual earnings were $195,539; the wife's were $85,604 with overtime pay, however, the trial court estimated her annual earning capacity at $75,000.

After a bench trial, the court entered a final judgment that (1) established an equitable distribution scheme mainly benefitting the former wife, (2) awarded her $2,000 per month in alimony of an unspecified type and duration, (3) awarded child support which had been previously granted, and (4) established a parenting plan which had been agreed to by the parties.

## ANALYSIS

### a. Equitable Distribution

The former husband first argues that the trial court erred in requiring him to pay the former wife an equalizing payment of $942,014 while distributing the Meridian Home and its mortgage to him. Under the terms of the judgment, if the former husband failed to tender the equalizing payment, the final judgment required the Meridian Home be auctioned and the proceeds from the auction split between the parties after payment of the mortgage and the auctioneer's fees.

3

Pursuant to section 61.075(3), Florida Statutes, "any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1)."[2] "While we review the trial court's factual findings

---

[2] The factors enumerated in subsection (1) of Florida's equitable distribution statute include:

(a)  The contribution to the marriage by each spouse, including contributions to the care and education of the children and services as homemaker.

(b)  The economic circumstances of the parties.

(c)  The duration of the marriage.

(d)  Any interruption of personal careers or educational opportunities of either party.

(e)  The contribution of one spouse to the personal career or educational opportunity of the other spouse.

(f)  The desirability of retaining any asset, including an interest in a business, corporation, or professional practice, intact and free from any claim or interference by the other party.

(g)  The contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties.

(h)  The desirability of retaining the marital home as a residence for any dependent child of the marriage, or any other party, when it would be equitable to do so, it is in the best interest of the child or that party, and it is financially feasible for the parties to maintain the residence until the child is emancipated or until exclusive possession is otherwise terminated by a court of competent jurisdiction. In making this determination, the court shall first determine if it would be in the best interest of the dependent child to remain in the marital home; and, if not, whether other equities would be served by giving any other party exclusive use and possession of the marital home.

(i)  The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.

4

under an abuse of discretion standard, failure to make the factual findings is an abuse of discretion and has been held to be reversible error." <u>Ortiz v. Ortiz</u>, 45 Fla. L. Weekly D1929, at *1 (Fla. 3d DCA Aug. 12, 2020) (citing <u>Callwood v. Callwood</u>, 221 So. 3d 1198, 1201–02 (Fla. 4th DCA 2017) ("Reversible error occurs where 'the equitable distribution in the final judgment is not supported by factual findings with reference to the factors listed in section 61.075(1), as required by section 61.075(3) when a stipulation and agreement has not been entered and filed.'" (internal citations omitted)).

Here, the final judgment makes only a cursory reference to the statutory requirement that the parties' "assets and liabilities should be equitably distributed." There is no discussion of any of the statutory factors. Because of this absence of findings, the portion of the final judgment concerning equitable distribution is reversed, and the case remanded for the trial court to reassess equitable distribution and make the requisite factual findings pursuant to section 61.075. <u>See</u> <u>Ortiz</u>, 45 Fla. L. Weekly D1929, at *1 n.1 (reversing and remanding equitable distribution scheme because it "does not contain the requisite statutory findings pursuant to Section 61.075" and noting "[t]his type of error . . . is fundamental and is reviewable where the error is apparent on the face of the final judgment"); <u>Rodriguez v. Rodriguez</u>,

---

(j)    Any other factors necessary to do equity and justice between the parties.

994 So. 2d 1157, 1160 (Fla. 3d DCA 2008) ("The distribution of marital assets and liabilities must be supported by 'factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in [section 61.075(1)].'") (quoting § 61.075(3), Fla. Stat.).

When reassessing these matters, the trial court is directed to expressly resolve the issue of whether the former husband's disability insurance payments should be treated as a marital asset subject to equitable distribution or as a stream of income for alimony, a matter the final judgment leaves unresolved.[3]

### b. *Alimony*

---

[3] Section 61.046(8), Florida Statutes, defines "income" as "any form of payment to an individual, regardless of source, including . . . disability benefits . . . ." Further, disability benefits paid for loss of future wages are the separate property of the injured spouse, thus not subject to equitable distribution as a marital asset. See Kay v. Kay, 988 So. 2d 1273, 1275 (Fla. 5th DCA 2008) (husband's "disability benefits will constitute payment for future lost wages based on his inability to work," and thus, "the disability policy was a non-marital asset and not subject to equitable distribution"); Gibbons v. Gibbons, 10 So. 3d 127, 132 (Fla. 2d DCA 2009) ("Compensation payable for future lost earnings is the separate property of the injured or disabled spouse. Thus, to the extent that benefits payable under a private disability policy represent a substitute for future lost income, such benefits are the separate property of the disabled spouse. Accordingly, such disability benefits are not a marital asset and are not subject to equitable distribution." (internal citations omitted)). Nevertheless, the disability payments may be considered for alimony purposes. Freeman v. Freeman, 468 So. 2d 326, 328 (Fla. 5th DCA 1985) (disability insurance benefits not subject to equitable distribution but may be considered for spousal support).

Next, the former husband notes several errors in the judgment regarding alimony. First, the final judgment did not make sufficiently detailed findings of need and ability to pay. "In determining whether to award alimony . . . , the court shall first make a specific factual determination as to whether either party has an actual need for alimony . . . and whether either party has the ability to pay alimony . . . ." § 61.08(2), Fla. Stat. (2019). Here, the final judgment summarily concluded that the $2,000 per month alimony award "will go towards satisfying the Wife's current needs and may restore some modest aspect of her lifestyle to something closer to that maintained during the marriage." As to the former husband's "ability to pay," the trial court found he "can afford this payment at this time . . . [because] [h]is financial affidavit reflects numerous monthly payments that can be readily eliminated or reduced."

These conclusory statements are insufficient findings of need and ability to satisfy section 61.08. See Ortiz, 45 Fla. L. Weekly D1929, at *2 n.2 (stating that "judgment on appeal does not include the reasoning behind the award of alimony to the former wife," and that "[a]lthough the amended final judgment appears to consider the statutory factors under Section 61.08, it does so in a perfunctory fashion. As such, the trial court's reasoning for concluding that the former wife was in need of alimony is unclear from the face of the judgment or transcripts of the proceedings filed with this Court").

Second, the final judgment gives no guidance as to whether the $2,000 per month alimony awarded to the former wife is for "bridge-the-gap, rehabilitative, durational, or permanent in nature or any combination of these forms of alimony." § 61.08(1), Fla. Stat. The statute requires the trial court to "consider all relevant factors" enumerated under section 61.08(2)(a)–(j) "in determining the proper type and amount of alimony" to be awarded. The trial court must expressly identify the nature and factual basis for the form and duration of the alimony awarded.[4]

Third, it is unclear from the final judgment how the amount of alimony was determined. The alimony award appears to be based on the former husband's unadjusted gross income of $16,312.[5] If true, this was error. See Vega v. Vega, 877 So. 2d 882, 883 (Fla. 3d DCA 2004) (noting that former spouse's argument

---

[4] On a related point, although the trial court correctly determined that the parties' twenty-year marriage qualified as a long-term marriage in Florida, the trial court failed to make an express finding that the former wife is entitled to a presumption in favor of permanent alimony. Gilliland v. Gilliland, 266 So. 3d 866, 868 (Fla. 5th DCA 2019) ("There is a rebuttable presumption that permanent periodic alimony is appropriate after a long-term marriage.") (citation omitted); see also Baron v. Baron, 300 So. 3d 369, 370 (Fla. 1st DCA 2020) ("In the case of a long-term marriage lasting at least seventeen years, the courts recognize a rebuttable presumption in favor of awarding permanent alimony.") (citations omitted). This presumption, although rebuttable, should be acknowledged and addressed on remand.

[5] The former husband's amended financial affidavit, admitted into evidence at trial, listed his monthly net income as $10,853 with monthly expenses totaling $20,449, for a monthly deficit of $9,596. The trial court did not address this evidence and therefore it is unclear whether this evidence was discounted for some reason or simply overlooked.

that alimony award should be based on gross income rather than net income was incorrect because "[i]n reality, the case law states that net income is the relevant benchmark") (citations omitted); Kingsbury v. Kingsbury, 116 So. 3d 473, 474 (Fla. 1st DCA 2013) ("The ability to pay alimony should be based on the party's net income.") (citations omitted); Tritschler v. Tritschler, 273 So. 3d 1161, 1166–67 (Fla. 2d DCA 2019) (reversing alimony award and remanding for further proceedings for the trial court to reconsider the alimony award using the parties' respective net incomes). The final judgment should reflect how the determination was made.

### c. Cross-Appeal on Apportionment of Boat Lien

Lastly, the former wife cross-appeals the trial court's apportionment of a lien on the Meridian Home imposed by the City of Miami Beach for unpaid fines due to the improper mooring of the parties' boat behind the marital residence. The trial court found the former husband was "primarily responsible" for the boat lien and apportioned 75% of the lien to him and 25% to the former wife. At the bench trial, the former wife's counsel argued that the lien, which amounted to almost a quarter of a million dollars, should be the former husband's sole responsibility because he disobeyed court orders requiring the boat be kept with a boat broker. However, the former wife could have sought an alternative remedy prior to trial when the former husband defied the court's orders regarding the storage of the boat to avoid the

9

staggering fees imposed on both parties. As such, the trial court did not abuse its discretion in apportioning the boat lien in the manner it did.

Affirmed in part, reversed in part, and remanded for further proceedings.