IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ELROY CROCKER,

       Appellant,

v.

                                       Case No. 5D23-103
                                       LT Case No. 10-2019-DR-000925

ROBIN TRUMAN CROCKER,

       Appellee.

_____/

Opinion filed July 21, 2023

Appeal from the Circuit Court
for Clay County,
Angela M. Cox, Judge.

Brian P. North, of Kenny Leigh and
Associates, Pensacola, for Appellant.

Michael J. Korn, of Korn & Zehmer,
P.A., Jacksonville, for Appellee.


WALLIS, J.

      Elroy Crocker ("Husband") appeals an Amended Final Judgment of

Dissolution of Marriage and an Order on Motions for Rehearing, arguing that

the trial court erred by awarding Robin Crocker ("Wife") a share of his pre-age 62 Federal Employee Retirement System ("FERS") Disability Retirement benefits as marital property subject to equitable distribution. Because those benefits are nonmarital disability benefits, we reverse.

**Facts**

The parties were married in 2005. Wife petitioned for dissolution in 2019. At trial, the parties agreed that the portions of their retirement benefits that accrued during the marriage should be equitably distributed. Those retirement benefits included Husband's FERS, Husband's military retirement, Husband's ExxonMobil Pension, Wife's FERS retirement, and Wife's Texas Retirement System Pension.

However, Wife also sought, as equitable distribution, a portion of the FERS disability benefits Husband was currently receiving. In support of her claim, Wife presented uncontroverted documentary evidence, including a letter approving Husband's disability benefits and his benefits booklet, entitled, "Your Federal Retirement Benefits." Wife also presented the testimony of Annette Ozuna, an expert in federal retirement benefits. Based on her review of Husband's benefits booklet and current materials from the Office of Personnel Management ("OPM"), Ozuna opined that Husband was currently receiving "federal disability" benefits and would continue to receive

2

such benefits until age 62, at which point his benefits would be recomputed according to his benefit booklet. Ozuna opined that Wife was entitled to receive part of Husband's federal disability payment before he reached age 62, according to the "wording to that effect in the attorney's handbook."[1] Her payments could commence upon the granting of the divorce and proper application for the payments. Husband's attorney did not object to this testimony or conduct any cross-examination of Ozuna. Finally, Wife called Husband, who confirmed that he was currently unemployed and was receiving "disability" due to cluster headaches. He also agreed that the trial court should "fairly and equitably split the retirement between you and your wife."

In its final judgment, the trial court distributed the aforementioned retirement benefits, but also included Husband's pre-age 62 FERS disability benefits in the distribution, stating:

> Husband receives his retirement in the form of Federal Disability Payments until he attains the age of 62 years. Pursuant to Federal Law, Wife shall be and is entitled to her share of the payments prior to the Husband's attaining the age of 62 years commencing with the first payment to be made in the first month after the entry of this Final Judgment of Dissolution of Marriage.

---

[1] The "attorney's handbook" that Ozuna referred to was not admitted into evidence as an exhibit.

3

Husband filed a motion for rehearing, arguing for the first time that under Florida caselaw, employer disability benefits are considered nonmarital property and thus not subject to equitable distribution, citing to *Hoffner v. Hoffner*, 577 So. 2d 703 (Fla. 4th DCA 1991); *Kay v. Kay*, 988 So. 2d 1273 (Fla. 5th DCA 2008); *Rumler v. Rumler*, 932 So. 2d 1165 (Fla. 2d DCA 2006). After hearing arguments and considering written submissions from the parties, the court rejected Husband's argument, stating,

> As to the Respondent's benefits, the Court has reviewed the testimony provided by Annette Ozuna as well as Petitioner's Exhibits 28 and 29. There is competent and substantial evidence that the benefit is a retirement benefit. The exhibits are specific to the Respondent's benefit. Petitioners Exhibit 29 is a letter to the Respondent from the retirement services office about the annuity. Petitioners Exhibit 28 is the Respondent's benefit booklet. Throughout the booklet, Respondent's benefit is referred to as a retirement benefit. Although on page 6, the benefit is referred to as disability retirement, the booklet goes on to refer to the Respondent as a disability retiree. The expert witness testified that the Petitioner can get her award before the Respondent reaches the age of 62. This testimony is credible and unrefuted. Notably, Respondent did not make this argument during trial.

The court entered an amended final judgment, again finding that, "[p]ursuant to Federal Law," Wife was entitled to her share of Husband's pre-age 62 FERS benefits beginning after entry of the amended final judgment.

**Preservation**

Under Florida Rule of Civil Procedure 1.530 and Florida Family Law Rule 12.530, trial courts have discretion to consider and address arguments raised for the first time in a motion for rehearing, in part to "prevent an injustice that would be caused by an error or omission by one of the lawyers." *Fitchner v. Lifesouth Cmty. Blood Ctrs., Inc.*, 88 So. 3d 269 (Fla. 1st DCA 2012). And, where a trial court exercises its discretion to address an argument raised for the first time on rehearing, the argument is considered preserved for appeal. *See Goetz v. AGB Tampa LLC*, 335 So. 3d 228, 231 (Fla. 2d DCA 2022) (finding arguments preserved for appeal where "trial court had discretion to entertain—and did entertain—the arguments presented" in rehearing motion); *Pisano v. Mayo Clinic Fla.*, 333 So. 3d 782, 788 (Fla. 1st DCA 2022) ("Appellants may have preserved their arguments through a motion for rehearing because a trial judge has discretion to consider new arguments raised on rehearing."). Because the trial court addressed Husband's rehearing argument, we find that it was sufficiently preserved for appeal.

**Standard of Review**

Appellate courts "review a trial court's characterization of an asset as marital or nonmarital de novo and any factual findings necessary to make

5

this legal conclusion for competent, substantial evidence." *Sturms v. Sturms*, 226 So. 3d 1004, 1006 (Fla. 1st DCA 2017) (quoting *Dravis v. Dravis*, 170 So. 3d 849, 852 (Fla. 2d DCA 2015)).

## Applicable Florida Law

"Generally speaking, an employer-sponsored disability pension does not constitute a marital asset subject to equitable distribution." *Gibbons v. Gibbons*, 10 So. 3d 127 (Fla. 2d DCA 2009). Instead, a spouse's "disability benefits" are considered income, section 61.046(8), Florida Statutes (2019), and may be considered for alimony purposes. *Frank v. Frank*, 314 So. 3d 634, 637 n.3 (Fla. 3d DCA 2021); *see also Freeman v. Freeman*, 468 So. 2d 326, 328 (Fla. 5th DCA 1985) ("[A] disability pension should not be considered a marital asset subject to equitable distribution. However, the pension may be considered in determining an award of alimony."). In contrast to disability benefits, a spouse's retirement benefits accrued during the marriage are considered marital property subject to equitable distribution. §§ 61.075(6)(a)1.e., 61.076(1), Fla. Stat. (2019); *Acker v. Acker*, 904 So. 2d 384, 386 (Fla. 2005).

Florida courts recognize, however, that disability pensions may serve different purposes, including compensating a disabled person for the "loss of earnings resulting from compelled premature retirement and from a

6

diminished ability to compete in the employment market"; "for personal suffering caused by the disability"; or to "replace a retirement pension by providing support for the disabled worker and his family after he leaves the job." *Gibbons*, 10 So. 2d at 131 (quoting *Ciliberti v. Ciliberti*, 374 Pa. Super. 228, 542 A.2d 580, 582 (1988)). Only the retirement portion of the disability pension is subject to equitable distribution. *Id*. (quoting *Rumler*, 932 So. 2d at 1166). Thus, the trial court must determine "what portion of the pension represents compensation for pain and suffering, disability and disfigurement, and what portion, if any, represents retirement pay." *Id*. (quoting *Brogdon v. Brogdon*, 530 So. 2d 1064, 1066 (Fla. 1st DCA 1988)).

In *Weisfeld v. Weisfeld*, 545 So. 2d 1341, 1346 (Fla. 1989), the Florida Supreme Court adopted an analytical approach to determining whether workers' compensation benefits and personal injury damages awarded to a spouse are subject to equitable distribution. This approach was later applied to determining what portion of disability benefits are subject to equitable distribution. *See, e.g., Kay*, 988 So. 2d at 1275; *Rosen v. Rosen*, 655 So. 2d 153, 154 (Fla. 3d DCA 1995) (holding trial court may not award an interest in spouse's disability income to other spouse "absent the appropriate analysis as set forth in *Weisfeld*"); *Stern v. Stern*, 636 So. 2d 735, 739 (Fla. 4th DCA 1993). The analytical approach requires "careful analysis" of the

7

"nature and purpose of the benefits at issue." *Gibbons*, 10 So. 3d at 131. "[R]eaching a correct result relative to the equitable distribution of 'disability benefits' requires looking beyond labels to the character and purpose of the benefit under review." *Id*.; *see also Gaffney v. Gaffney*, 965 So. 2d 1217, 1221 (Fla. 4th DCA 2007) ("Despite its 'disability pension' designation, the marital portion of Husband's pension was a marital asset subject to equitable distribution to the extent it does not represent actual compensation for disability."); *Brogdon*, 530 So. 2d at 1065 ("Although it is undisputed that the husband's pension is denominated a 'disability' pension, it appears, based on the record evidence, that at least some portion of the pension may actually constitute deferred compensation for the husband's more than 25 years of service to his employer, and thus could be more accurately described as a retirement benefit.").

Application of this analytical approach is reflected in many cases focusing on the purpose served by disability benefits in a particular case. *See, e.g.*, *Frank*, 414 So. 3d at 637 n.3 ("[T]o the extent that benefits payable under a private disability policy represent a substitute for future lost income, such benefits are the separate property of the disabled spouse."); *Kay*, 988 So. 2d at 1275 (stating it was "clear from *Weisfeld*, and the cases following it, that when disability benefits are paid for the loss of future wages and future

8

medical expenses, they are the separate property of the injured spouse");

*Hoffner*, 577 So. 2d at 704 ("[W]e are of the view that a disability pension upon which a spouse is presently receiving benefits, by its very nature replaces future lost income, and thus is not a marital asset subject to equitable distribution."); *Freeman*, 468 So. 2d at 328 (concluding that a disability pension is not a marital asset for purposes of equitable distribution because it is designed to compensate employee for lost earnings and injuries sustained on job, and thus is "personal to the employee and distinguishable from a retirement pension").

### Applicable Federal Law

FERS disability retirement benefits are governed by Title 5 United States Code, Part III, Subpart G, Chapter 84, Subchapter V, sections 8451 to 8456, and by Title 5 Code of Federal Regulations, Chapter 1, Subchapter B, Part 844, sections 844.101-.404. A review of these statutes and code rules, and comparison of them to corresponding statutes and code rules governing other forms of FERS retirement, suggests that Husband's pre-age 62 FERS disability retirement benefits are disability benefits for purposes of Florida dissolution cases, despite their frequent references to "retirement."[2]

---

[2] Husband properly conceded below that his post-age 62 retirement benefits accrued during the marriage were subject to equitable distribution

9

Under the United States Code, "[a]n employee who completes at least 18 months of civilian service creditable under section 8411 and has become disabled *shall be retired* on the employee's own application or on application by the employee's agency." 5 U.S.C. § 8451(a)(1)(A), "Disability Retirement" (2020). In other words, federal law characterizes a person receiving FERS disability benefits as being "retired" and calls the benefits that person receives "disability retirement." However, those federal labels are not dispositive under Florida dissolution law. *See Gibbons*, 10 So. 3d at 131.

Eligibility for such benefits is based on disease or injury that renders an employee unable to perform "useful and efficient service in the employee's position." 5 U.S.C. § 8451(a)(1)(B). The employee is not eligible if he or she has declined a reasonable offer of reassignment to a vacant position in the employee's agency for which the employee is qualified and would be able to render useful and efficient service. 5 U.S.C. § 8451(a)(2); 5 C.F.R. § 844.103 (2019). Prior to the age of 62, FERS disability benefits are based strictly upon a percentage of the employee's average salary. 5 U.S.C. §§ 8451(c), 8452(a)(1)(A) (2019); 5 C.F.R. § 844.302 (2019). That amount, however, is reduced by 100% of the annuitant's "assumed disability

---

and he does not challenge the trial court's distribution of those benefits on appeal.

10

insurance benefit" under the Social Security Act.  5 U.S.C. § 8452(a)(2) (2019); 5 C.F.R. § 844.302 (2019).

Continued receipt of such benefits is not guaranteed.  It is based on continuing disability.  Thus, "[a]n annuitant receiving a disability retirement annuity" shall receive annual medical exams until age 60, unless the disability is considered permanent.  5 U.S.C. § 8454 (2019).  An FERS disability retirement annuity terminates if the annuitant:  (1) is reemployed by the (federal) Government; (2) OPM determines that the annuitant has "recovered"; or (3) the annuitant is restored to an earning capacity fairly comparable to the current rate of pay for his or her previous position, based on wages or self-employment income.  5 U.S.C. § 8455 (2019); 5 C.F.R. §§ 844.401-.402 (2019).

On the annuitant's 62nd birthday, the annuity "shall be redetermined," and the redetermined annuity "shall be equal to the amount of the annuity to which the annuitant would be entitled under section 8415, taking into account the provisions of subparagraph (B)."  5 U.S.C. § 8452(b)(1)-(2); 5 C.F.R. § 844.305 (2019).  In other words, when an FERS disability annuitant reaches age 62, his or her annuity is recomputed according the FERS "basic [retirement] annuity" computation, which is "1 percent of that individual's

11

average pay multiplied by such individual's total service." 5 U.S.C. § 8415(a) (2019).[3]

In contrast to FERS disability retirement, the FERS "basic" retirement annuity is governed by Title 5 United States Code, Part III, Subpart G, Chapter 84, Subchapters I and II, sections 8401 to 8425, and by Title 5 Code of Federal Regulations, Chapter 1, Subchapter B, Part 841, sections 842.101-.1204. *See, e.g.*, 5 C.F.R. § 842.201 (2019) ("This subpart regulates the statutory provisions on eligibility for nondisability retirement under the Federal Employees Retirement System (FERS).").

An employee must complete five years of creditable civilian service to be eligible for the basic annuity. 5 U.S.C. § 8410 (2019). The employee must also attain a minimum retirement age and minimum years of creditable service to receive immediate benefits under the basic annuity. 5 U.S.C. § 8412 (2019). The basic retirement annuity is not based on disability, does not require annual medical exams, is not terminable based on recovery from disability or reemployment, and is "in addition to the benefits payable under the Social Security Act." 5 U.S.C. § 8403 (2019). The amount of the benefit

---

[3] We note that the substance of the above provisions was explained in Husband's approval letter and benefits booklet, which were presented by Wife without objection or refutation by Husband.

12

is calculated by multiplying one percent of the annuitant's average pay by the annuitant's total service. 5 U.S.C. § 8415 (2019).

## This Case

We are sympathetic to the rulings of the trial court in this case. Husband's counsel should have raised this issue at trial. We commend the trial court for exercising its discretion to consider Husband's untimely argument upon rehearing, but we do not believe the court's findings are supported by Florida or federal law. Instead of applying the analytical approach required by Florida caselaw, the trial court focused on evidence that Husband's FERS disability retirement benefits were approved by OPM's "retirement services office" and Husband's benefit booklet referred to him as a "disability retiree" receiving "disability retirement" benefits. That evidence does not address the character and purpose of the benefits in question.

The court also relied on Wife's expert's legal opinion in concluding Wife was entitled to a portion of these benefits under federal law. Again, this is understandable given Husband's failure to challenge that opinion at trial. But the expert's opinion was based on an "attorney handbook" that does not appear to have been admitted into evidence and is not part of our record on appeal. On rehearing, both parties identified the particular provision that the expert relied upon and it does not appear to us to support her conclusion.

Based on the application of Florida and federal law to the uncontroverted evidence in this case, the benefits at issue here are disability benefits and thus not subject to distribution because the character and purpose of these benefits is to replace Husband's income lost from disability. No evidence supports the conclusion that these benefits were intended to "*replace a retirement pension* by providing support for the disabled worker and his family after he leaves the job."

Accordingly, we reverse that portion of the final judgment equitably distributing to Wife a portion of Husband's pre-age 62 FERS disability retirement benefits and remand for recharacterization of them as a non-marital asset.

REVERSED IN PART; REMANDED WITH INSTRUCTIONS.

MAKAR and MACIVER, JJ., concur.