DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CALVIN CALLWOOD,**
Appellant,

v.

**TOLEATHA CALLWOOOD,**
Appellee.

No. 4D16-1595

[ July 5, 2017 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John L. Phillips, Judge; L.T. Case No. 2015DR003957XXXXNB.

James S. Cunha of the Law Offices of James S. Cunha, P.A., West Palm Beach, for appellant.

Alan R. Burton, Boca Raton, for appellee.

TAYLOR, J.

The former husband appeals a final judgment of dissolution of marriage. We affirm on the time-sharing issue without further comment. However, we reverse the equitable distribution plan because the trial court failed to make the required findings regarding the factors enumerated in section 61.075(1), Florida Statutes (2016). We also reverse the trial court's determination of the husband's income for child support purposes.

### *Equitable Distribution*

Under the trial court's equitable distribution schedule, the net equitable distribution to the wife was $86,613, and the net equitable distribution to the husband was $86,614. Additionally, each party was entitled to receive 50% of the proceeds of the sale of the marital home, which had about $400,000 in equity.

The trial court also distributed the parties' entire interest in a property in the U.S. Virgin Islands called "Estate Peterborg," along with the liens and debt thereon, to the wife. The husband hired a contractor to build a

single-family dwelling on the property, but construction is not complete.

The husband testified that the Estate Peterborg property was worth around $565,000, a figure he derived from the latest value provided by the tax assessor. However, the husband admitted that the value of the property would go up substantially as soon as an occupancy permit is issued.

The wife also testified the Estate Peterborg property was currently worth about $500,000 without an occupancy permit, which was similar to the tax assessor's valuation. However, the wife testified that once an occupancy permit is issued, the property "stands to be worth between three to five million dollars."

The trial court found that there was no credible evidence as to the value of Estate Peterborg. It nonetheless relied upon the tax assessor's valuation and found that Estate Peterborg was worth $565,300, less the outstanding liens totaling $635,000, for a total negative value of $69,700. However, the trial court did not actually factor the value of Estate Peterborg into the equitable distribution schedule, as the liability of Estate Peterborg's negative value of $69,700 is not shown as being distributed to either party.

On appeal, the husband argues that the trial court erred in awarding the Estate Peterborg to the wife without making the findings of fact required by section 61.075, Florida Statutes (2016). We agree.

The standard of review for a trial court's equitable distribution of marital assets and liabilities is abuse of discretion. *Pierre v. Pierre*, 185 So. 3d 1264, 1265 (Fla. 4th DCA 2016). However, a trial court's failure to consider mandatory statutory factors is error as a matter of law. *Ondrejack v. Ondrejack*, 839 So. 2d 867, 870 (Fla. 4th DCA 2003).

Section 61.075(1), Florida Statutes, "lists ten separate factors for the trial court to consider when determining the equitable distribution of assets and liabilities in a dissolution of marriage action, and whether the equitable distribution should be equal or unequal." *Richardson v. Knight*, 197 So. 3d 143, 146 (Fla. 4th DCA 2016).

Section 61.075(3), in turn, requires the trial court to make specific findings regarding equitable distribution in any contested dissolution action where there is no stipulation between the parties:

> (3) In any contested dissolution action wherein a stipulation and agreement has not been entered and filed, *any*

2

*distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1). . . .*

§ 61.075(3), Fla. Stat. (2016) (emphasis added).

The factors listed in section 61.075(1) "should be used in any contested case to justify any equitable distribution of marital assets, fifty-fifty or otherwise." *McMonagle v. McMonagle*, 617 So. 2d 373, 373–74 (Fla. 5th DCA 1993).

Reversible error occurs where "the equitable distribution in the final judgment is not supported by factual findings with reference to the factors listed in section 61.075(1), as required by section 61.075(3) when a stipulation and agreement has not been entered and filed." *Richardson*, 197 So. 3d at 146 (citation and internal quotation marks omitted). Although compliance with section 61.075(3)'s requirements of written findings of fact "is not necessary when the parties have reached a valid agreement regarding equitable distribution, these requirements must be met when there is no such agreement and a distribution scheme is ordered by the court." *Id.* (citation omitted).

Here, regardless of whether the overall equitable distribution was equal or unequal,[1] the trial court erred in entering an equitable distribution plan that was not supported by factual findings in the final judgment with reference to the factors enumerated in section 61.075(1). Such findings were required by section 61.075(3) because this was a contested dissolution action in which "a stipulation and agreement has not been entered and filed."

We decline to reach the husband's argument that a proper application of the factors under section 61.075(1) would favor an equitable distribution of Estate Peterborg to him or, in the alternative, a distribution of the property to both parties as tenants in common.

Based on the foregoing, we reverse and remand for the trial court to make the requisite findings using the factors outlined in section 61.075(1).

---

[1] The trial court's equitable distribution plan arguably favored the husband, even though the wife received the Estate Peterborg. The trial court found the Estate Peterborg to have a negative value—a finding the husband does not challenge—and the trial court evenly divided the remaining assets and liabilities.

### *The Husband's Income*

After the husband's release from prison, the husband began working from home as a dispatcher for a transportation company owned by his girlfriend. According to his most recent financial affidavit, the husband had a net monthly income of $2,103. The husband reported that his proposed/estimated monthly expenses would be $4,749, and claimed a monthly deficit of $2,646.

On the issue of the husband's income, the trial court found that the husband receives a biweekly salary of $708.04 and rental income of $850 per month. Due to the husband's criminal conviction and incarceration, the trial court found that the husband's job prospects were somewhat limited.

The trial court, however, relied on the monthly deficit the husband claimed on his financial affidavit as the basis for finding that the husband was receiving additional income from his family, his girlfriend, or some other undisclosed source. Specifically, the trial court found that the husband's "expenses are being paid from an undisclosed source on a regular basis, at least to the extent of the claimed deficit." Accordingly, the trial court found that the husband "earns or is capable of earning at least $4749 net per month."

On appeal, the husband argues that the trial court's determination of his income was based on a misinterpretation of his financial affidavit and was not supported by competent substantial evidence. We agree.

A trial court's determination of a party's income for purposes of establishing support obligations must be supported by competent substantial evidence. *Sallaberry v. Sallaberry*, 27 So. 3d 234, 236 (Fla. 4th DCA 2010). However, to the extent the trial court's ruling was based on its interpretation of a written document, the standard of review is de novo. *Muir v. Muir*, 925 So. 2d 356, 358 (Fla. 5th DCA 2006).

The competent substantial evidence standard "is not satisfied by evidence which merely creates a suspicion or which gives equal support to inconsistent inferences." *Fla. Rate Conference v. Fla. R. R. & Pub. Utils. Comm'n*, 108 So. 2d 601, 607 (Fla. 1959). "Surmise, conjecture or speculation have been held not to be substantial evidence." *Id.*

Gross income includes "[r]eimbursed expenses or in kind payments to the extent that they reduce living expenses." § 61.30(2)(a)13., Fla. Stat. (2016). "Specific dollar values for the in kind contributions and

reimbursed expenses must be determined, and the other statutory computations must be performed, in order to arrive at the parties' net income levels, a proper support amount, and the respective shares of support." *Garcia v. Garcia*, 560 So. 2d 403, 404 (Fla. 3d DCA 1990).

A party's income may also include gift income "if the gifts are continuing and ongoing, not sporadic, and where the evidence shows that the gifts will continue in the future." *Carlson v. Carlson*, 204 So. 3d 456, 457 (Fla. 4th DCA 2016) (citation and internal quotation marks omitted).

Here, competent substantial evidence did not support the trial court's finding that the husband received additional income from his family, his girlfriend, or another undisclosed source in the amount of $2,646. Although the husband's parents provided financial support to the wife while the husband was in prison, there was no evidence that the husband's parents gave him ongoing gifts that would continue in the future. Further, while the husband worked for his girlfriend and apparently lived with her, there was no evidence that the husband received reimbursed expenses or in-kind payments from his girlfriend.

The trial court inferred that the husband received additional income of $2,646 because this was the amount of the deficit he claimed on his financial affidavit. Under the facts of this case, such an inference was conjecture, rather than competent substantial evidence.[2]

First, the written instructions on the financial affidavit state: "If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write 'estimate' next to each amount that is estimated." Here, the deficit on the husband's financial affidavit was derived from "proposed/estimated" expenses that were not reflective of what the husband currently pays, and thus could not support an inference that the husband was currently receiving undisclosed income.

Second, the trial court's analysis overlooked that the husband had the ability to fund the claimed deficit with personal assets, at least until the children reached the age of majority. The husband reported a net worth of $672,732, including the roughly $200,000 he stood to receive once the marital home sold.

Finally, even if the deficit on the husband's financial affidavit

---

[2] In an appropriate case, however, a spouse's purported deficit on a financial affidavit might be probative evidence of undisclosed income.

constituted competent substantial evidence of undisclosed income, it was fundamentally unfair for the trial court to treat the husband's deficit differently than the wife's deficit. If the trial court had applied the same reasoning to the wife's deficit as the court applied to the husband's deficit, the court should have found that the wife was receiving additional income from her boyfriend or some other undisclosed source in an amount equal to her actual deficit.[3]

Although we understand the trial court's frustration with the husband's seeming lack of credibility on financial issues, the court's determination of income must nevertheless be supported by competent substantial evidence. Accordingly, we reverse on this issue and remand for further proceedings consistent with this opinion. On remand, the trial court may, in its discretion, either: (1) reduce the husband's income by $2,646 and recalculate child support accordingly; or (2) take additional evidence regarding the husband's income.

*Affirmed in part, Reversed in part, and Remanded.*

MAY and CIKLIN, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**

---

[3] The husband argues that, under the trial court's reasoning, the roughly $5,100 monthly deficit that the wife claimed on her financial affidavit should have been included in her income. However, because the court found the wife's income to be significantly higher than the income she claimed on her financial affidavit, her actual monthly deficit would have been significantly less than the deficit she claimed on her financial affidavit, even assuming the expenses on her financial affidavit were correct.