DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KIMBERLY ANNE CROSSEN,**
Appellant,

v.

**MICHAEL EDWARD FEELEY,**
Appellee.

No. 4D2024-3024

[February 11, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Majorie Miller, Judge; L.T. Case No. 502024DR000264.

Rebecca Mercier Vargas and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., Palm Beach Gardens, for appellant.

John Schutz of John F. Schutz, P.L. (withdrawn as counsel after filing brief), Palm Beach Gardens, for appellee.

GROSS, J.

The primary issue arising from this dissolution of a nineteen-month marriage is whether the trial judge erred by equally dividing the value of a $900,000 condominium penthouse between the parties. The trial court rejected the wife's request for an unequal distribution of the condominium, which had been gifted to her by her parents prior to the marriage.[1]

We reverse because the trial court failed to take into consideration the factors that inform the equitable distribution of property in dissolution cases under Chapter 61, Florida Statutes (2023). We also reverse on several other issues that we discuss below.

---

[1] Our description of the condominium as a "gift" is not binding on the wife's parents, who were not parties in this case. That characterization is consistent with the trial judge's finding that underpinned her ruling. We have abbreviated the facts regarding the condominium based on that ruling.

## *Facts at Trial*

The parties married on May 21, 2022. Approximately nineteen months later, on January 8, 2024, Kimberly Crossen ("the wife") petitioned for dissolution and other relief, noting the parties had no dependent or minor children.

At the time of trial, the wife was forty years old and Michael Feeley ("the husband") was forty-five. During the marriage, the wife worked as a retail store manager. She entered the marriage owning two condominium units. The husband has an MBA and has worked in various finance positions. He came into the marriage with some debt and minimal assets.

The parties stipulated to keeping their personal property and any related debt, each keeping their respective non-marital 401K, and the husband remaining solely responsible for his non-marital student loan.

### *Wife's Condominium Unit 1821*

Unit 1821 is not at issue in this lawsuit. Before the marriage, the wife purchased the unit with her parents' help. She sold the unit during the marriage and paid the proceeds to her parents to repay them on a mortgage and note for the unit.

### *Penthouse-07*

Six months before the marriage, the wife paid $590,000 to purchase penthouse-07. Her parents fronted the entire cost, and the wife gave them a signed promissory note and mortgage for the $590,000. Title was recorded in the wife's name only. The closing statement did not show a mortgage on the property.

Similar to the arrangement between the wife and her parents for unit 1821, the wife's parents gave her $1,600 per month to pay the homeowners' association fees, insurance, and other expenses for penthouse-07. Her parents also gave her $10,000 for the 2022 taxes and $5,000 for the 2023 taxes. The monies given for the unit's expenses were added to the mortgage, which then had an annual forgiveness based on the IRS gifting allowance.

During the approximately seven months between the filing of the dissolution petition and the trial date, the husband lived in penthouse-07 alone. The wife resided elsewhere.

The husband agreed that he, at no time, paid either the HOA dues or insurance costs.  The husband paid the electric bill of $75–$150 a month and contributed $2,000 to pay his share of the 2022 property taxes.  As to maintenance or improvements to the property during the marriage, the husband testified he had replaced some light fixtures bought with marital funds.  He testified that he did not know of the wife's mortgage with her parents on the unit.

The parties stipulated that penthouse-07 was appraised at a value of $850,000 at the time of the marriage and $900,000 on the date when the wife filed the petition for dissolution of marriage.

*Wife Added Husband to the Title of Penthouse-07*

About two months after the parties married, the wife titled the unit in the parties' joint names as tenants by the entireties.[2]

*The Final Judgment*

The trial court rejected the wife's request for unequal distribution of penthouse-07:

> The Court having considered all of the facts and circumstances, including but not limited to the statutory factors as outlined in F.S. 61.075(1), finds the [wife] failed to justify a basis for an unequal distribution of [penthouse]-07.  According to the testimony and exhibits, the [wife] did not contribute anything to the acquisition or improvement of [penthouse]-07; her parents provided all of those funds, as part of their familial estate planning for both of their children.  Both the [wife] and her father told [the father's lawyer] to prepare the deed stating it was a gift, for no consideration, of unencumbered real property.  Contending there should be an unequal distribution at this time would ignore the clear terms and conditions of the July 15, 2022 deed.

The trial court rejected equitable distribution of the wife's debt to her parents for penthouse-07.  The court found that the "mortgage was not a 'legal encumbrance' upon the property and not a 'marital liability.'"  The court determined that the husband was not responsible for the note and mortgage, a finding which the wife does not challenge on appeal.  The court

---

[2] The wife does not appeal the trial court's determination that penthouse-07 was a marital asset.

3

stated that "[t]o the extent, if any, that the Promissory Note and Mortgage are a liability, they are a non-marital liability" of the wife alone.

The court rejected the wife's claim for reimbursement of penthouse-07's expenses from the date of filing to the date of the final judgment. The court wrote that the wife's "parents [] paid those expenses. The Court does not have jurisdiction to award the parents anything. Furthermore, according to the testimony and exhibits, the parents gifted those payments to the [wife]."

### *Discussion*

### A. *The trial court failed to make the findings required by section 61.075(1) & (3).*

Because "equitable distribution is premised on the theory of an equal partnership in marriage, the court should begin this task on the premise that each spouse is entitled to receive an equal division." *Robertson v. Robertson*, 593 So. 2d 491, 493 (Fla. 1991). However, section 61.075(1), Florida Statutes (2023), provides that an unequal distribution is permissible if there is "a justification" for it.

Section 61.075(1) sets forth a number of factors in sub-paragraphs (a)-(j) for the trial court to consider in distributing marital assets and liabilities. § 61.075(1), Fla. Stat. (2023). Section 61.075(3) requires that "any distribution of marital assets . . . be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in" section 61.075(1). § 61.075(3), Fla. Stat. (2023).

We have consistently enforced this statutory language. "[A] trial court's failure to consider mandatory statutory factors is error as a matter of law." *Callwood v. Callwood*, 221 So. 3d 1198, 1201 (Fla. 4th DCA 2017). In *Hines v. Williams*, 384 So. 3d 237, 239 (Fla. 4th DCA 2024), we wrote that the failure to "make specific findings referencing the factors enumerated in section 61.075(1) . . . compel[s] reversal on that ground alone." The duty to make such findings is not discharged by a final judgment's cursory reference to the statute followed by a conclusory statement that the trial judge has complied with it.

Here, the trial court failed to make the mandatory findings in compliance with section 61.075. What the court said belies some confusion.

4

First, the judgment pointed out that the wife "did not provide any money for the purchase of the unit." This statement fails to acknowledge that even if the unit was a gift from generous parents, the unit entered the marriage as the wife's non-marital property. *See generally Rivera v. Rivera*, 404 So. 3d 442 (Fla. 3d DCA 2023) (finding house husband inherited from grandmother was husband's nonmarital asset). The unit was, by statute, a nonmarital asset until the wife gifted an interest as tenants by the entireties to the husband during the marriage. *See* § 61.075(6)(b)1., Fla. Stat. (2023) ("'Nonmarital assets and liabilities' include . . . [a]ssets acquired and liabilities incurred by either party prior to the marriage[.]").

That one spouse's property was initially a non-marital asset is a significant factor in a case involving a request for unequal distribution in a short-term marriage.

For example, *LaCoste v. LaCoste*, 58 So. 3d 404 (Fla. 1st DCA 2011), approved the unequal distribution of a 159-acre tract of land to the husband; the husband owned the land prior to "the less-than-two-year duration of the marriage." *Id.* at 406; *see also Ibanez-Vogelsang v. Vogelsang*, 601 So. 2d 1303, 1303–04 (Fla. 3d DCA 1992) (in a six-week marriage, approving the unequal distribution of a $900,000 home to the husband, "which he brought into the marriage as his separate property").

Second, the judgment does not indicate that the court gave any consideration to the "duration of the marriage" per section 61.075(1)(c). *See, e.g.*, *McMonagle v. McMonagle*, 617 So. 2d 373, 374 (Fla. 5th DCA 1993) (involving a "short, incompatible marriage (less than two years)"). Nor did the court discuss or consider the "economic circumstances of the parties" under section 61.075(1)(b), Florida Statutes (2023), which showed that neither party had significant assets before marriage, other than the wife's ownership of penthouse-07.

Third, the judgment appears to have determined that the wife's post-marital inclusion of the husband on the deed to the property precluded an unequal distribution to the wife. Such a determination is contrary to established law.

Courts have looked to section 61.075(1)(j) to conclude that an interspousal gift *during* a marriage does not preclude unequal distribution of that gift in a dissolution proceeding. That section allows a court to consider "[a]ny other factors necessary to do equity and justice between the parties." § 61.075(1)(j), Fla. Stat. (2023). We have observed that "[t]he fact that an asset is determined to be an interspousal gift and then categorized as a marital asset does not mandate that the asset be split

5

equally where an unequal split is 'necessary to do equity and justice between the parties.'" *Williams v. Williams*, 686 So. 2d 805, 808 (Fla. 4th DCA 1997) (quoting § 61.075(1)(j)).

*LaCoste, Ibanez-Vogelsang[3]*, and *McMonagle* all involved a husband's post-marital conveyance of an interest in real property to a wife; all three cases concluded that such a gift did not preclude unequal distribution of the property. *See LaCoste,* 58 So. 3d at 406; *Ibanez-Vogelsang*, 601 So. 2d at 1303–04; *McMonagle*, 617 So. 2d at 374. In the flush of optimism that exists early in a marriage, decisions can be made which seem unwise with the benefit of hindsight. While life must be lived forward, judges have the ability to look backward under section 61.075(1)(j) to achieve "equity and justice" in the division of marital property.

On this point, we reverse and remand to the trial court to reconsider the unequal distribution using the factors outlined in section 61.075(1). *See Callwood*, 221 So. 3d at 1202.

## B. **The trial court erred by failing to order the husband to reimburse the wife for his share of the expenses for penthouse-07 from the time of the petition for dissolution to the final judgment**.

The wife sought reimbursement for penthouse-07's expenses, other than the electric bill paid by the husband, from the time of separation through the final hearing.

The trial court denied this reimbursement, stating:

> [T]he evidence demonstrated the Petitioner's parents . . . paid those expenses. The Court does not have jurisdiction to award the parents anything. Furthermore, according to the testimony and exhibits, the parents gifted those payments to the Petitioner.

---

[3] The trial court suggested that *Ibanez-Vogelsang* is distinguishable because the husband in that case bought the house with his nonmarital funds and wife's parents here provided the funds for the purchase of penthouse-07. As previously discussed, under section 61.075, the characterization of an asset as premarital does not turn on how the asset was acquired. That the wife's parents assisted her in purchasing the unit prior to the marriage is not relevant in deciding whether the asset was premarital within the statute's meaning. The wife owned the unit before the marriage, like the husband in *Vogelsang*. And similar to that husband, the unit here was the wife's sole substantial asset.

The trial court abused its discretion by not making the husband jointly responsible for the HOA fees, insurance and taxes for the unit for that time frame. Where a husband and wife jointly own the marital residence, "they are generally said to be jointly responsible for any obligations arising from the home, such as taxes, home improvement expenses and homeowner's insurance premiums" during the pendency of the dissolution. *Cintron v. King*, 961 So. 2d 1010, 1013 (Fla. 4th DCA 2007) (citing *Whiteley v. Whiteley*, 329 So. 2d 352, 353 (Fla. 4th DCA 1976)).

In *Cintron*, the trial court in the final judgment gave the husband full credit for the tax payments and homeowner's insurance premiums that he made after the wife had vacated the marital home. *Id.* at 1012. We decided "[w]hile the award [was] not necessarily erroneous since courts have discretion to award a disproportionate share of expenses, the court in this case did not explain why it gave former husband full credit, nor does the record provide justification for a disproportionate award." *Id.* at 1013 (internal citation omitted).

Here, the trial court's justification for not having the husband pay his fair share of expenses for the unit was that the wife's parents had paid the expenses owed as a gift to the wife. Failure to pay such expenses would have put the unit at peril of lien foreclosure. No one testified this payment was a gift to the husband. The presumption of a gift requires "donative intent, delivery of possession[,] and surrender of dominion and control." *Renner v. Renner*, 400 So. 2d 1292, 1293 (Fla. 4th DCA 1981); *McHugh v. McHugh*, 397 So. 3d 1179, 1183 (Fla. 5th DCA 2024).

While the payments for the expenses were delivered and surrendered, no direct evidence existed of the parents' donative intent regarding the husband's financial obligations on the unit. It defies common sense to believe that the wife's parents intended to make such a gift to the husband, who was in the middle of a divorce proceeding with their daughter, and who maintained sole possession of the unit while the wife lived elsewhere.

No evidence supported the trial court's finding of a gift by the wife's parents to the husband. The trial court abused its discretion by failing to require the husband to reimburse the wife for his share of penthouse-07 expenses from the time the petition for dissolution was filed until the time of the final judgment.

### C. *The trial court erred by ruling the parties would be equal owners of the dog, Tucker, after their divorce, and failing to*

***require the husband to reimburse the wife for half of Tucker's
expenses.***

In the joint pretrial stipulation, the parties made this stipulation regarding their dog, Tucker:

> The parties purchased a golden doodle in April 2023, eight months before filing of petition, for $2,500.00. The dog was selected by [the wife]. While [the wife] worked in a retail store, the husband worked from the condominium. The parties brought the dog to doggy day care. The dog had obedience training, but no specialized therapy or comfort dog training. Both parties want ownership of the dog. After separation, the parties agreed to share custody.

At trial, each party testified about their close relationship with Tucker and why each thought Tucker should be awarded to them.

In the final judgment, the trial court found that while both parties wanted the dog, neither party had presented "competent or substantial evidence as to when the dog was purchased, who purchased the dog, how the dog was purchased and/or any value of the dog."[4]

"While a dog may be considered by many to be a member of the family, under Florida law, animals are considered to be personal property." *Bennett v. Bennett*, 655 So. 2d 109, 110 (Fla. 1st DCA 1995). To determine how to distribute a pet in the equitable distribution context, courts must consider the factors in section 61.075(1). *See Harby v. Harby*, 331 So. 3d 814, 822 (Fla. 2d DCA 2021). We note that much of the testimony we have encountered on dog custody resembles evidence on child custody; but no authority allows a trial court to grant joint custody of a pet, which the trial court effectively did in this case by making the parties equal owners of the dog. *See Bennett*, 655 So. 2d at 110; *Harby*, 331 So. 3d at 823 (stating that a "trial court may consider a party's sentimental interest in property, such as the ordinary attachment to pets, alongside the other factors of section 61.075").

The trial court erred by leaving the now-divorced parties as joint owners sharing custody of Tucker. Further, the trial court had sufficient evidence to assign a value to Tucker and distribute him to one of the parties in the

---

[4] In a motion for rehearing, the wife asked that she be awarded the dog and that the husband be awarded one-half of the purchase price of the dog. The motion was denied.

equitable distribution. The parties' stipulation stated "that Tucker was purchased for $2500" and the wife's motion for rehearing made it clear that the parties intended to use that figure to value the dog.

"When the parties agree that a case is to be tried upon stipulated facts, the stipulation is binding not only upon the parties but also upon the trial and reviewing courts." *Waite v. Milo-Waite*, 358 So. 3d 768, 773 (Fla. 4th DCA 2023).

On remand, the trial court shall equitably distribute Tucker to one party or the other. In its discretion, the court may take additional testimony on this issue.

On the issue of Tucker's expenses, the wife sought reimbursement for Tucker's medical bills incurred after the dissolution petition was filed. This reimbursement was one of the issues to be resolved per the parties' pretrial stipulation.

At trial, the wife introduced the medical expense summary for those expenses into evidence with no objection. The wife's counsel then advised the court with respect to that exhibit:

> [W]ith respect to this one, Judge, it is resolved now as of Friday, that the [husband] has agreed to pay [the wife] medical expenses of $2,203.45 for Tucker.

After the wife's counsel made this statement, the husband neither objected nor disputed that a stipulation had been reached as to the expenses. The husband's counsel instead advised the trial court that Tucker's custody was an issue for the court to decide.

In the final judgment, the trial court ignored the parties' stipulation and ruled that the wife had failed to present any competent, substantial evidence to establish the medical expenses incurred.[5]

"Stipulations, on appropriate matters in pending litigation, are looked upon with favor by the courts because they are designed to simplify, shorten, or settle litigation and save costs to the parties." *McGoey v. State*, 736 So. 2d 31, 34 (Fla. 3d DCA 1999) (citing *Smith v. Smith*, 90 Fla. 824, 107 So. 257, 260 (1925)). "A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the

---

[5] In a motion for rehearing, the wife attempted to call the trial court's attention to the stipulation, attaching emails and affidavits, but without success.

parties and upon the Court." *Yeakle v. Yeakle*, 12 So. 3d 884, 885–86 (Fla. 4th DCA 2009) (quoting *Steiner v. Steiner*, 638 So. 2d 174, 175 (Fla. 1st DCA 1994)); *see also McGoey*, 736 So. 2d at 34 (proper "stipulations are binding not only upon the parties but also upon the trial and appellate courts"). "To avoid the consequences of a stipulation properly entered into, a party must show that the agreement is the product of a fraud, misrepresentation or mistake of fact." *McGoey*, 736 So. 2d at 35 (quoting *Bethea v. Bethea*, 596 So. 2d 1279, 1280 (Fla. 3d DCA 1992)).

In this case, the husband did not dispute the stipulation, let alone offer proof of fraud, misrepresentation or mistake of fact. The trial court erred by disregarding the parties' stipulation on the issue of Tucker's medical expenses. On remand, the trial court shall enter an order consistent with the stipulation that the husband pay the wife $2,203.45 as agreed.

*Reversed and remanded for further proceedings consistent with this opinion.*

KUNTZ, C.J., and GERBER, J., concur.

\*          \*          \*

**Not final until disposition of timely-filed motion for rehearing.**

10